JESSIE L. COWHERD ET AL., APPELLANTS, V. JAMES B. KITCHEN, EXECUTOR, ET AL., APPELLEES.

FILED JANUARY 19, 1899. No. 8542.

1. **Will: Construction: Discretion of Executor: Payment of Bequests: Mortgage: Residuary Legatee.** A testator made certain specific bequests in money, providing that the same should be paid by the executor, in his discretion, either in cash, or in shares in the capital stock of the Kitchen Brothers Hotel Company at their par value, or part in cash and part in such shares of stock at their par value, having regard to the condition of the estate and the circumstances of the legatees, or any of them,

Cowherd v. Kitchen.

The rest and residue of the estate was bequeathed to J. B. K., stipulating in the will that "the said J. B. K. out of said residue of my estate to pay all the indebtedness of the Kitchen Brothers Hotel Company, including a certain mortgage for $90,000." *Held*, The executor had the right to pay the specific bequests in stock at its face value in lieu of cash, and that the duty was not placed on the executor, but upon the residuary legatee, to pay the indebtedness and mortgage of said company.

2. ———: RESIDUARY ESTATE: LIEN OF MORTGAGE. The residuum passed to the residuary legatee charged with the payment of such indebtedness and mortgage.

3. ———: ———: ———. Whether the residuary legatee became personally liable for said mortgage debt by procuring an extension of time of its payment, or by the acceptance of the bequest, is not decided.

4. Executors: FINAL ACCOUNT: DISCHARGE. The final account of an executor should not be approved, and he be discharged, until the trust has been fully executed.

5. ———: DISCHARGE: PARTIES TO APPEAL. One cannot prosecute an appeal from an order discharging an executor where he is not prejudiced by the decision.

APPEAL from the district court of Douglas county. Heard below before AMBROSE, J. *Affirmed*.

*Herbert J. Davis* and *Kennedy & Learned*, for appellants.

*John C. Cowin, W. D. McHugh*, and *George E. Pritchett*, contra.

NORVAL, J.

Richard Kitchen and his brother, James B. Kitchen, were the equal owners, on November 20, 1889, of the entire capital stock in the Kitchen Brothers Hotel Company, consisting of 500 shares each of the par value of $1,000. The Paxton Hotel property in the city of Omaha constituted the assets of the company. On that day Richard Kitchen executed his last will and testament, which contained, among others, the following provisions:

"Ninth. I give and bequeath to my brother Charles W. Kitchen, of Leadville, Colorado, twenty-five thousand dollars ($25,000).

"Tenth. I give and bequeath to each of his sons, my nephews, Ralph Kitchen and Charles W. Kitchen, Junior, five thousand dollars ($5,000), and to my niece, his daughter, Jessie Cowherd, wife of W. S. Cowherd, of Kansas City, Missouri, five thousand dollars ($5,000)."

"Any or all of said legacies described in paragraphs of this will numbered second, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, and twelfth may be paid by my executor, in his discretion, either in cash or in shares in the capital stock of the Kitchen Brothers Hotel Company at their par value, or part in cash and part in such shares of stock at their par value, having regard to the condition of my estate, and the circumstances of the legatees, or any of them; said legacies shall be paid as soon as it can be properly done without embarrassment to my estate, within three years after my death. My executor is hereby duly authorized to assign and transfer, or cause or authorize the transfer of any of my shares in the capital stock of said company, to carry out the provisions of this will."

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

"Lastly. I give, devise, and bequeath to my brother James B. Kitchen all of the rest, residue, and remainder of my estate of every name and nature, real and personal, the said James B. Kitchen out of said residue of my estate to pay all the indebtedness of the Kitchen Brothers Hotel Company, including that certain mortgage for ninety thousand ($90,000) dollars, held by George Warren Smith, upon lots one (1) and two (2), block 138, in the city of Omaha. In case of the death of said James B. Kitchen before my decease, the rest, remainder, and residue of my estate shall be disposed of as follows:

"First. For the payment and satisfaction of all debts and liabilities of every name and nature of the Kitchen Brothers Hotel Company, including the said mortgage to George Warren Smith for ninety thousand dollars ($90,000) and all taxes, assessments, or other incumbrances upon its property.

"Second. The residue, after satisfying said indebtedness and liabilities, shall be divided equally, share and share alike, among all the other legatees in the will named who shall survive me.

"I hereby constitute and appoint my brother James B. Kitchen to be the executor of this my last will and testament, no official bond as such, or other bond, to be required of him. In case of his death before my decease, or before the final settlement of my estate, then said Ralph Kitchen to be such executor, no official bond as such, or other bonds, to be required of him."

On June 27, 1890, the testator died. His said will was duly admitted to probate in the county court of Douglas county, and James B. Kitchen qualified as executor and entered upon the performance of the duties of his trust. The assets belonging to the estate, and which came into the hands of the executor, consisted of a farm, two diamond shirt-studs, and the 250 shares of stock in the Kitchen Brothers Hotel Company. At the time of the death of the testator the mortgage of $90,000 upon the property of the company mentioned in the will remained unpaid. The indebtedness secured by said mortgage was not to become due until 1896, and prior to the maturity thereof an extension of the time of payment for the period of ten years was obtained by the directors of the Kitchen Brothers Hotel Company, at the instance of James B. Kitchen, and as yet said mortgage has not been paid. The diamonds and farm were distributed according to the provisions of the will. The executor also determined and elected to pay the legatees the amount of their several bequests in the shares of stock of the Kitchen Brothers Hotel Company at the par value thereof in lieu of cash, as the will permitted him so to do. He accordingly, within three years from the death of the testator, delivered to each legatee, excepting certain minors, the requisite number of shares of said stock, which at their face value equaled the amount of his or her legacy, although two of them—Jessie L. Cowherd

and Charles Kitchen, Jr.—declined to receipt in full
therefor.    Certain minors, whose bequests aggregated
$25,000, have been paid nothing under the will.    The
executor, on February 26, 1894, filed in the county court
his final account, accompanied by a petition for final set-
tlement and discharge.    In said account it was stated,
in effect, that there were in the hands of the executor,
belonging to the legatees to whom distribution had not
been made on account of their being minors, twenty-five
shares of stock in the Kitchen Brothers Hotel Company
of the par value of $25,000 and a "balance on hand going
to residuary legatee, 137 shares at par, $137,000."    Sub-
sequently said Jessie L. Cowherd and Charles Kitchen,
Jr., legatees named in the tenth paragraph of the will,
filed objections to the allowance of the final report or
account of the executor and to his discharge, alleging, in
substance and effect, that the residuary bequest was by
the will charged with the payment of said mortgage, and
was made upon the express condition that James B.
Kitchen, out of the residuum, should pay all the indebt-
edness of the Kitchen Brothers Hotel Company, includ-
ing said mortgage; that the same had not been paid, but
on the contrary James B. Kitchen, as executor and as the
owner of one-half of the shares of stock of said company,
in 1893, procured an extension of the time of payment of
said mortgage until the year 1906; that after such exten-
sion he sent to the objecting legatees each five shares of
stock in said company as payment of their legacies under
the will; that they, upon receipt thereof, object to the
satisfaction of the legacies in that manner, for the reason
the indebtedness of the company, and especially said
mortgage debt, had not been paid or secured by James
B. Kitchen, whereby, they assert, they were entitled to
have the bequests paid in cash, unless said mortgage in-
debtedness should be secured to be paid out of the residu-
ary bequests; and that notwithstanding all the indebted-
ness of said company, by the terms of the will, was to
have been paid out of the residuum, James B. Kitchen

has paid the interest on the mortgage out of the assets and funds of the corporation. The objecting legatees brought the ten certificates for the shares of stock into the county court and offered to deliver up the same.

Upon the hearing of the matter the county court did not sustain the said objections, but affirmed the final report of the executor, except as to the item of delivery of stock to Jessie L. Cowherd and Charles Kitchen, Jr.; ordered the executor to pay their bequests in the stock of said company at its par value, provided that the same shall be transferred to, and held by, them free from the $90,000 mortgage; appointed James B. Kitchen trustee of the stock bequeathed to him as residuary legatee, and, upon taking the proper oath of office and the giving of a bond for $35,000, conditioned to pay said mortgage debt and interest out of the shares of stock bequeathed to him as residuary legatee, the executor was directed to transfer all of the shares of stock left as a residuum to James B. Kitchen, as trustee, taking his receipt therefor; and that upon the compliance with said order and decree by the executor, and the presentation of proper vouchers and report of his doings in the premises, he be discharged. Jessie L. Cowherd and Charles Kitchen, Jr., prosecuted an appeal to the district court, where pleadings were filed by the appellants, the minor legatees and the executor, which it will be here unnecessary to summarize. At the hearing that court allowed and approved the final account of the executor, adjudged and decreed that the delivery of the ten shares of the stock to Jessie L. Cowherd and Charles Kitchen, Jr., by the executor was in full payment and satisfaction of their respective legacies; that the executor assign and transfer to Ralph Kitchen, as guardian of the minor legatees, twenty-five shares of stock of said company in full payment of the legacies due his wards; that the shares of stock left as a residuum under the will be transferred by the executor to James B. Kitchen, as trustee without bond, to be applied and appropriated first toward the payment of the

indebtedness of the Kitchen Brothers Hotel Company, as provided in the will, and the residue to the residuary legatee; and that Jessie L. Cowherd and Charles Kitchen, Jr., pay the costs of the appeal. They bring the cause to this court for review on appeal. Numerous reasons are presented why the trust has not been executed so as to entitle the executor to be discharged.

The first argument of counsel for appellants is that the primary intention of the testator was that the bequests should be paid in cash. Doubtless, Richard Kitchen when he made his will supposed that the legatees to whom specific sums were bequeathed would receive their respective shares in money, and not absolutely in shares of stock in the Kitchen Brothers Hotel Company, else stock would have been specially bequeathed unconditionally, instead of giving a certain number of dollars to each legatee, as was in the first instance plainly expressed in the will. But it is also manifest from the reading of the entire provisions of the will that the testator at the time he executed the instrument foresaw or contemplated that a contingency might arise when the shares of stock in said company, and which constituted his chief assets, would not be worth their face value, and the payment of the bequests in cash would embarrass his estate, or would not be so advantageous to the several legatees, so that a discretion or option was given the executor by the tenth paragraph of the will to pay any or all legatees, to whom money was bequeathed, either in cash or in shares in the capital stock of said company at their par value, or part in cash and part in such shares. From the reading of the will it is clear that the testator also contemplated that there would not only be sufficient assets to meet all special bequests, but there would be a residuum to go to the residuary legatee more than sufficient to pay the entire indebtedness of the Kitchen Brothers Hotel Company, including the mortgage of $90,000 on the real estate. The proofs show that at no time since the death of the

testator, had the assets of the estate been converted into cash, could a sufficient amount of money have been realized to pay the special bequests dollar for dollar, and there would have been nothing left for the residuary legatee. The executor, being the residuary legatee, naturally elected to pay the bequests in shares of stock, as by the will he was given the right to do, because by that mode of payment there would remain of the assets of the estate 137 shares of the stock of said company to go to himself as the residuary legatee, subject to the indebtedness of the company, while a settlement with the other legatees on a cash basis would have exhausted the entire assets, and the residuary legatee would have been deprived of any benefits under the will. It is clear, and we so hold, that the executor was not as a matter of absolute right required by the will to pay the several bequests in cash.

It is next contended, if the legatees cannot demand that they be paid in money, they were entitled to receive stock in the condition in which the testator left it, with the burden of the mortgage indebtedness removed.   In a qualified sense this is true.   The residuum, or the balance of the estate after satisfying the special bequests, the testator charged with the payment of the said mortgage, but if the residuum should prove insufficient to lift the debt thereby secured, then, to that extent, the stock received by the legatees would necessarily be impaired or depreciated in value.   As we read and construe the provisions of the will, it was not the intention of the testator that the mortgage indebtedness of the Kitchen Brothers Hotel Company should be first paid by the executor before the legatees could be compelled to accept stock in payment of their bequests, because, by the terms of the will, the legatees were to be paid within three years from the death of the testator, and the mortgage debt, without the consent of the owner thereof, was not payable within that period, as it was not to mature until 1896.   This is true for another and better reason: The

32

mortgage and other indebtedness of the company were required to be paid, not by James B. Kitchen as executor, but by him as residuary legatee out of the residuum or portions of the estate left to him. The language of the will is explicit on that point. It reads: "I give, devise, and bequeath to my brother James B. Kitchen all of the rest, residue, and remainder of my estate of every name and nature, real and personal, the said James B. Kitchen out of said residue of my estate to pay all the indebtedness of the Kitchen Brothers Hotel Company," etc. It is plain that the duty and obligation of paying the mortgage in question was not placed on the executor, but upon the residuary legatee, unless the residuary legatee declined to accept the residuum under the provisions of the will. In that event, of course, it would be the duty of the executor to apply the residue of the estate first towards the liquidation of the indebtedness of the company. The confusion arises from the fact that the residuary legatee was named in the will as executor. Had James B. Kitchen declined the appointment as executor, and Ralph Kitchen been designated by the county court to execute the will, it would do violence to the provision of the will last above quoted to say that the said Ralph Kitchen as executor was required out of the residuum to pay said mortgage. The fact that the residuary legatee and executor is one and the same person is no valid reason for placing a construction on the will different from that which would obtain if the executor were not the residuary legatee. It is manifest that the testator had the utmost confidence in the integrity of his brother James B. Kitchen, inasmuch as the latter was named in the will as the executor, with the express stipulation that no bond should be required of him as such. And it is believed that the same confidence prompted the testator to give the residuum of his estate to James B. Kitchen and authorized and required him out of the same to discharge the indebtedness of the Kitchen Brothers Hotel Company. There is no provision in the will which

makes it the duty of the executor to see that the residuary legatee discharged the mortgage in question before the residue of the estate is turned over to him. On the contrary, it is very evident that such was not the intention of the testator. James B. Kitchen, by the residuary clause of the will, was required out of the residue of the estate to pay the mortgage. He could not pay it out of the residue of the estate before the same had come into his hands. Manifestly this is so. And there could be no residuum ascertained until all the legatees, other than the residuary legatee, had received their portions of the estate, especially in case the executor paid in cash, and until the costs and expenses of executing the trust had been met. This is too clear to require discussion; and it logically follows that the executor, at any time within the three years designated in the will, was authorized to pay each specific bequest in stock without having first satisfied the mortgage in question.

Another argument of counsel for appellants is that the time of the payment of the mortgage having been extended ten years, the executor was thereafter powerless to pay the legatees in stock, and by such extension he became obligated to pay the bequests in cash. Counsel for the executor, in reply to this contention, suggest that the extension of the mortgage debt was not obtained by James B. Kitchen, but by the directors of the Kitchen Brothers Hotel Company. It is true it was their act, but they were moved to do so by the insistence of James B. Kitchen. Doubtless, it was the intention of the testator that the residuary legatee should pay off this mortgage at its maturity, but neither his failure so to do nor the extension of the time for the payment of mortgage debt deprived the executor of the right to pay the bequests in the shares of stock owned by the testator in lieu of money, because it was not the duty of James B. Kitchen as executor to pay the mortgage, nor did he as executor obtain the extension. If the appellants suffered loss by such extension or by the omission to

pay the mortgage at its maturity, the courts are open to afford them relief, but those matters are not sufficient causes to prevent the settlement of the estate and the discharge of the executor.

It is urged that James B. Kitchen having accepted the residue is personally liable for the mortgage debt. There is no room to doubt that the 137 shares of stock received by him as residuary legatee is charged with the payment of the mortgage, but whether by accepting the devise he became individually bound to satisfy the mortgage, principal and interest, we are not called upon to decide, since if the contention of appellants on this point is well founded, it would not prevent a discharge of the executor. They could enforce the payment of the mortgage by a suit in equity against the stock or by an action at law against the residuary legatee upon the implied promise to pay it, if such a promise can be implied from the acceptance of the residue of the estate.

We quite agree with counsel that the executor could not properly be discharged until the trust has been fully executed. The debts of the estate of Richard Kitchen and the expenses of administration have been paid. All specific legacies have been paid, except certain bequests to minors, for whom at the time of the discharge of the executor no guardian has been appointed. The residue of the estate has been turned over to James B. Kitchen as residuary legatee. The mortgage of the Kitchen Brothers Hotel Company was not a debt of the deceased, nor one, as we have already shown, which it was the duty of the executor to pay. The will had been fully executed, so far as it was within the power of the executor to discharge the trust, save and except the legatees who were minors have not been paid their bequest, and a discharge of the executor should not have been mad · until they were paid. But these appellants were not prejudiced by the order of discharge, and it is elementary that one cannot appeal from a decision, however erroneous, which does not affect his substantial rights. (*Burlington*

& M. R. R. Co. v. Martin, 47 Neb. 56.)    A judgment of affirmance will be entered.

AFFIRMED.

IRVINE, C., not sitting.