### In re Estate of John A. Creighton.

John A. McShane et al., Executors, appellees, v.
Ellen E. Cannon et al., appellees; William T.
Thompson, Attorney General, et al., Interven-
ers, appellants.

James H. McCreary et al., appellees, v. Catherine
McShane Furay et al., appellees; William T.
Thompson, Attorney General, et al., Interven-
ers, appellants.

Filed June 12, 1912.    Nos. 16,775, 16,776.

1. Courts: County Courts: Jurisdiction. The county court has ex-
clusive, original jurisdiction of the probate of wills and the set-
tlement of estates, and its final orders within its jurisdiction
are binding upon all parties and not subject to collateral attack.

2. ———: Appellate Jurisdiction: Settlement of Estate: Parties.
An order of the county court in the settlement of an estate, by
which distribution is made of the assets, is appealable to the
district court; the proceeding being *in rem,* all persons inter-
ested in the assets are parties. If A asks for an order of distri-
bution that will exclude B from participation in the assets, he
cannot afterwards object to the appearance of B to protect his
interest in the county court, or afterwards upon appeal to the
district court.

3. Charities: Enforcement: Attorney General. A public charity is
a public benefit, and the attorney general, upon request of the
governor, may represent the public in giving force and effect
to such charity when its interests are not otherwise adequately
represented.

4. Attorney and Client: Authorization of Attorney. When it is the
duty of the attorney general to appear in an action or legal
proceeding, he may authorize other members of the bar to
appear for him, and pleadings or other papers executed in his

name by responsible members of the bar of this court will not be disregarded upon the sole ground that the attorney general must appear in person, and with no suggestion that such appearance was not duly authorized.

5. Wills: BEQUEST: CONSTRUCTION. A bequest in the following words: "I hereby will, devise and bequeath to the executors of this my last will and testament fifty thousand dollars in trust to purchase a site and build thereon a home for poor working girls, expending not more than one-half of said sum for the purchase of said site and erecting a building thereon and investing the balance in interest-bearing securities and applying the interest derived therefrom to the support of the said charity," is sufficiently specific to establish a public charity.

6. ———: CONSTRUCTION. When there are inconsistent and irreconcilable provisions in a will, the latest is generally supposed to express the intention of the testator. This rule, however, does not apply to ambiguous or apparently inconsistent words in the same sentence or provision.

7. ———: ———. A clause or provision of a will must, if possible, be so construed as to give effect to the intention of the testator. If doubtful or ambiguous words, in their ordinary literal sense, appear to be inconsistent with plain and unambiguous language in the same clause or sentence, such words will be so construed, if reasonably possible, as to render the whole clause or sentence intelligible and consistent.

APPEAL from the district court for Douglas county: LEE S. ESTELLE, WILLIAM A. REDICK and ALEXANDER C. TROUP, JUDGES. *Reversed with directions.*

*Smyth, Smith & Schall,* for appellants.

*E. Wakeley, George W. Doane, W. D. McHugh, W. H. Herdman, Charles B. Keller, Arthur C. Wakeley* and *W. H. De France, contra.*

SEDGWICK, J.

On January 6, 1904, John A. Creighton, a wealthy citizen and well-known philanthropist of Omaha, being then a widower and childless, executed his last will and testament, containing special bequests aggregating

$1,150,000. By paragraphs 2 to 6, inclusive, he bequeathed to nephews, nieces and personal friends $250,000. By paragraphs 7 to 12 he bequeathed $900,000 to various charities. Paragraph 13 is what is commonly called the residuary clause. Paragraph 10 reads thus: "I hereby will, devise and bequeath to the executors of this my last will and testament fifty thousand dollars in trust to purchase a site and build thereon a home for poor working girls, expending not more than one-half of said sum for the purchase of said site and erecting a building thereon and investing the balance in interest-bearing securities and applying the interest derived therefrom to the support of the said charity." Paragraph 13 is as follows: "I hereby will, devise and bequeath all the rest residue and remainder of the estate real and personal of which I may die seized or possessed to the legatees and beneficiaries hereinbefore mentioned, each of them to take and have the proportion of such remainder as the bequest herein made to him or her bears to the whole of my estate."

Paragraph 14 revoked all wills theretofore made, and constituted and appointed John A. McShane, James H. McShane, John D. Creighton and John A. Schenk executors without bond. James H. McShane declined to qualify, and Mr. Schenk died prior to the trial of this case in the court below, leaving the other two gentlemen named as the executors of the will. Mr. Creighton died February 7, 1907, leaving an estate of nearly $4,000,000. A number of nephews and nieces, who have been denominated the "unnamed heirs," were not mentioned in the will. It would appear from the record that they determined to offer no contest to the probating of the will, but to obtain their rights, if any they had thereunder, by a construction of the same. The will was therefore admitted to probate March 16, 1907. October 1, 1907, the unnamed heirs filed a petition in the county court for the construction of certain clauses of the will, including the tenth and thirteenth clauses, above set out, in which

petition they made the executors and legatees under the will defendants. The county court entered an order requiring the parties named in the petition and all persons interested to show cause why the prayer of the petition should not be granted. A decree was entered in the county court construing the will and holding the tenth clause, above set out, to be void and incapable of execution. The executors appealed to the district court. The unnamed heirs filed in the district court their petition praying for a construction of clauses 10 and 13 of the will, above set out. A petition of intervention in the name of the attorney general was filed in the district court on relation, as alleged, of Catherine B. McCarthy, and two others, and on his own behalf as attorney general, and on behalf of the people of the state of Nebraska, alleging that the charity and trust under the tenth clause of the will were of a public nature, in which the people of the state were interested, and that it was the right and duty of the attorney general to appear in the matter, for the purpose of protecting the said charity and trust; and that the relators were poor, working girls, having a right to intervene and appear in the case, as beneficiaries, through the attorney general. A motion was filed by the unnamed heirs to strike the petition of the attorney general from the files, for the reason that neither he nor the state nor the relators were parties to the suit, and had no rights or interest entitling them to intervene in the case pending on appeal from the county court. An amended petition of intervention was filed in the name of the attorney general, reciting that he appeared as set out in the original petition, and adding that the appearance was by request of the governor of Nebraska. In this amended petition the same claim is made as in the original petition, and it further relates that the executors and trustees "have failed to demur to or answer said petition or the contentions and claims made therein;" that the cause was docketed in that court March 12, 1908, and in the usual course of the business of the court would have been

reached and tried more than a year sooner if it had been pressed with due diligence by the executors. It then sets out the interest of the executors as stated in the original petition, and alleges that the financial interest of the trust and charity and of the beneficiaries thereunder is not in harmony with the financial interest of the executors and trustees, but is opposed thereto; that on October 5, 1909, they filed in the probate court a petition, "representing that a proposition of compromise had been made, proposing to give the executors $75,000 and the heirs $85,000 of the $160,000 in controversy, their counsel advising them that the litigation might be prolonged for several years, preventing or delaying the final closing of the estate, and the establishing and organizing of the home for working girls, and averred that they presented these facts to the court without recommendation, praying the court to advise and instruct them as to what action, if any, they should take as executors with reference to the proposition." This petition of intervention was signed, "William T. Thompson, Attorney General of the state of Nebraska, by Smyth, Smith & Schall, his attorneys, who are also attorneys for relators." The petition is verified by Mr. Smyth. On the same day Messrs. Smyth, Smith & Schall filed a separate petition of intervention for the three ladies named as relators in the petition of intervention which they had filed for the attorney general. A motion was filed to strike from the files the amended petition of the attorney general. A demurrer was filed to his amended petition, and a like demurrer to the petition of the three ladies named. The motion and the demurrer to the petition were both overruled. On the same day the motion to strike the petition of intervention of McCarthy, Brown and St. Onge was sustained and their petition stricken from the files. The executors filed an answer to the petition of the unnamed heirs. The case was tried and argued to the Honorable Lee S. Estelle, the Honorable A. C. Troup and the Honorable W. A. Redick, sitting together as judges of the district court for Douglas county.

The three judges of the district court above named, construing the latter part of the thirteenth paragraph literally, entered a decree sustaining the tenth paragraph of the will, and adjudged that under that paragraph and paragraph 13 the executors, as trustees and in trust for the purpose as set out in paragraph 10, were entitled to take $88,426.34 in satisfaction of said legacies and interest, and that the sum of $79,256.83 be paid by the executors to the heirs at law of John A. Creighton, deceased, share and share alike. Two motions for a new trial were filed in the name of the attorney general, two by the executors, and one by the unnamed heirs, and all were overruled. No motion for a new trial was filed by the interveners, McCarthy, Brown and St. Onge. An appeal bond was filed in the district court in the name of the attorney general, and within the time provided by law the attorney general caused a transcript to be filed in this court, and notice of appeal was duly given. The unnamed heirs and the executors filed their cross-appeals. After the appeal had been lodged in this court appellees (the unnamed heirs) moved to dismiss the appeal upon several grounds. The case was heard and an opinion rendered, which will be found reported in 88 Neb. 107, 113. The motion to dismiss was at that time overruled, all of the grounds urged in said motion being co  idered and decided, except the one that the attorney general had no authority to intervene in the case or to prosecute an appeal to this court. As to that point we said: "The appellees assert that the attorney general has no authority to intervene in the case or to prosecute an appeal to this court. The briefs and arguments upon these propositions are so meager that we shall reserve the question for consideration in disposing of the case upon its merits."

In their brief and in their oral argument at the bar appellees renew their contention that the district court for Douglas county erred in overruling their motion to strike the petition of intervention of the attorney general, and in allowing him to intervene in said cause in

the district court; that the district court erred in over-ruling their demurrer to the petition of intervention of the attorney general; that the attorney general, *"sole appellant herein,* has no interest, direct or indirect, of a beneficial or pecuniary character in the subject matter in litigation herein, and therefore is not, and cannot, be prejudiced by any decree or judgment entered herein in the district court for Douglas county, Nebraska, and hence possesses no right of appeal therefrom to this court."

It is contended by the appellees that neither the state nor the people of the state nor the attorney general in his official capacity had any such interest in the charity, sought to be established by the tenth paragraph of the will, as would have entitled the attorney general to appear at any stage of the proceedings; and, further, that, even if he might properly have appeared before trial in the county court, he could not do so after there had been a full and complete trial in that court and the case taken to the district court on appeal. This, for two reasons: First, that the order of the county court, entered October 4, 1907, for all persons, claiming any interest in the controversy, to appear and answer on or before the 28th of that month, operated as a bar to any right on the part of the attorney general to appear thereafter; and, second, that the intervention, if permissible at all, should have been made in the court of original jurisdiction—the county court. Section 9489, Ann. St. 1911, provides: "The attorney general shall appear for the state, and prosecute and defend all actions and proceedings, civil or criminal, in the supreme court, in which the state shall be interested or a party, and shall also, when requested by the governor, or either branch of the legislature, appear for the state and prosecute and defend in any other court, or before any officer, any cause or matter, civil or criminal, in which the state may be a party, or interested." Section 4778 provides: "It shall be the duty of the attorney general to appear and defend actions or claims against the state. He may require the assistance

of the district or prosecuting attorney of the district or county wherein the action is brought, and in any case of importance or difficulty the governor or chief officer of the department or institution to which it relates may retain and employ a competent attorney to appear on behalf of the state." The attorney general has not objected to the appearance of these attorneys in his name, and is not now questioning their right to so appear; but, on the other hand, it seems that they are appearing with his approval. It is clear that the objection to their authority to represent the attorney general in this matter is not well taken.

The executors asked for the opinion of the court whether the will should be construed to give the whole estate to the beneficiaries named, including the charity named in the tenth paragraph, or those beneficiaries should take only a portion of the remainder of the estate, leaving a part to be distributed, as an intestate estate, to the legal heirs of the testator. It would seem proper for them to refuse to contend for either side of the controversy, and that made it necessary that the interests of the proposed charity should be represented, since the so-called unnamed heirs were vigorously insisting upon a construction favorable to them. Upon the principles and reasoning of *State v. Pacific Express Co.,* 80 Neb. 823, and *State v. Chicago, B. & Q. R. Co.,* 88 Neb. 669, we think it was the duty of the attorney general to represent the interests of this charity. See, also, *Chambers v. Baptist Educational Society,* 1 B. Mon. (Ky.) 215; *Rolfe and Rumford Asylum v. Lefebre,* 69 N. H. 240; *Women's Christian Ass'n v. Kansas City,* 147 Mo. 103; *Going v. Emery,* 16 Pick. (Mass.) 107. In *St. James Orphan Asylum v. Shelby,* 60 Neb. 796, it was said: "The provisions for the administration of charitable trusts under the statute of 43 Elizabeth *held* not to be in force in this state. The doctrine of administering trusts for charitable uses *cy pres,* or under the prerogatives of the king as *parens patriæ* by his sign-manual, is inapplicable

and has no part or place in the administration of the
courts, either at law or in equity, in this state." This
relates to the manner of administering the trust, and, as
is held in the same case, "where a certain and ascertain-
able trustee or trustees are appointed, with full power
to select the beneficiaries or designate the objects of the
charity, and devise a plan for the application of the funds
bestowed, the court will, through the trustee, execute the
charity." Here the right of this public charity to exist
is assailed, and such duties as general executors under
the will are imposed upon the trustees as render it em-
barrassing for them to contend for the claims of either
party as against the other. In such case it is the duty of
the attorney general to appear in support of the charity.

The brief of the so-called unnamed heirs presents un-
questioned authorities to support the proposition that the
decree of the probate court in the settlement of estates
upon matters within the jurisdiction of that court are
final, unless appealed from, and cannot be collaterally
attacked. It was perhaps unnecessary to cite authorities
upon so plain a proposition, but that does not determine
the question of the right to appear in the district court
after the case has been appealed. *Blatchford v. New-
berry,* 100 Ill. 484, and other similar cases, are cited, and
upon these authorities it is contended that no party could
appear in the case in the district court who had not ap-
peared in the probate court. In the Illinois case it is
decided that, "if there are interests such as would make
it proper for other parties to intervene in the cause, such
intervention must begin in the court of original jurisdic-
tion, and cannot be allowed in this court." What that
court decided was that new parties could not appear and
present new issues in the appellate court. This, how-
ever, does not decide the question that is before us. The
proceeding in the probate court to settle the estate of a
decedent is a proceeding *in rem.* Every one interested is a
party in the probate court, whether he is named or not,
and this is particularly true as to the question of the dis-

tribution of the estate. Under our statute it is not neces-
sary to give any notice of the hearing upon the distribu-
tion of the assets of the estate. Everybody interested in
that distribution is a party to the proceeding, whether he
has appeared in the probate court in the proceeding or
not, and so, if the state, in behalf of this charity, was
interested in the distribution of the assets in the probate
court, it was necessarily a party before that court, whether
it appeared there or not. The court was acting upon the
*res* of the estate, and not upon the persons interested in
it. Therefore, it seems to follow that, when an appeal
was taken by the executors to the district court, it re-
moved the whole case to the district court, and all par-
ties interested in the distribution were necessarily par-
ties there and entitled to be heard.

The question of the validity of the tenth clause of the
will is not as extensively discussed in the briefs as other
questions are. It gives the trustees named a sum of
money and directs them to purchase a site and build a
house which it designates as a charity "for poor, working
girls." It directs that they shall invest a certain specified
proportion of the available funds in interest-bearing
securities, and that they shall support the "charity,"
and shall use the interest derived from the securities for
such support. While it leaves the details to the discre-
tion of the trustees, it is sufficiently specific to establish
the charity intended and place the general management
and control in the hands of the trustees. *St. James
Orphan Asylum v. Shelby,* 60 Neb. 796; *Chick v. Ives,* 2
Neb. (Unof.) 879; *St. James Orphan Asylum v. Shelby,*
75 Neb. 591; *In re Estate of Nilson,* 81 Neb. 809.

The principal contention in this case is as to the con-
struction and meaning of the thirteenth clause of the
will. It is generally considered that one who makes a
will intends to dispose of his property thereby. A will
which makes defined bequests and devises to individuals
and persons named, and contains a general residuary
clause, will, as against collateral heirs, be held to dispose

of all of the property of the estate, unless the contrary appears from the language of the will itself. When there are inconsistent and irreconcilable provisions in a will, the latest is generally supposed to express the intention of the testator. This rule, however, does not apply to ambiguous or apparently inconsistent words in the same sentence or provision.

The thirteenth provision of the will expresses the intention to dispose of the remainder of the estate not included in the specified legacies and devises. It gives this remainder to the "legatees and beneficiaries" mentioned in the will. The testator was aware that he had not included all of his property in the specified amounts. He intended that all of the beneficiaries named should participate in the remainder. How much should each beneficiary take? He had already fixed the proportion that each should take of that part of his estate disposed of by the prior provision of the will. Did he intend that these respective legatees and beneficiaries should take the remainder in the same proportion? In this very clause he gives them the whole of this remainder. He must have used the words, "the bequest herein made," with that fact in mind. He had given this legatee a specified sum and a share in the remainder, and this gift would bear a certain proportion to the whole estate. He had also given each legatee a specified sum and a share in the remainder which would bear the same proportion to the whole estate. It would, of course, follow that the specified sum given to each legatee would bear the same proportion to the sum of the legacies specified that the entire gift to each legatee would bear to the whole estate. The amount of the legacies specified in the former provisions of the will was $1,150,000. This legatee had already been given one twenty-third of that amount, and would take the same proportion of the whole estate, and necessarily the same proportion of the remainder. We recognize this is not giving a literal construction to the last few words of this provision. "The proportion of such

remainder as the bequest herein made to him or her bears to the whole of my estate" is not literally equivalent to the proportion of such remainder as the bequest hereinbefore made to him or her bears to the sum of the bequests hereinbefore made. These words of the will, if taken by themselves, would more naturally have the meaning contended for by the unnamed heirs; but, construing these words with the clause in which they stand and in the light of the whole will, the construction stated presents less difficulty.

The judgment of the district court is reversed and the cause is remanded, with directions to enter a decree distributing the whole estate to the same legatees and in the same proportions that the $1,150,000 of the specified bequests was distributed to the beneficiaries specified in the will, giving to the trustees of the charity named in the tenth clause of the will one twenty-third part of the whole estate.

REVERSED.

FAWCETT, J., dissenting.

I am unable to concur in the majority opinion, for the reason that I do not think any of the parties are entitled to a review by this court of the judgment entered in the district court.

When the unnamed heirs filed their petition in the county court, for a construction of the will, that court entered an order requiring the parties named in the petition "and any and all other person or persons having or claiming to have any right, title or interest, actual or contingent," in the estate or in the assets of the estate, either as heir, legatee, beneficiary, trustee, or otherwise, to answer and show cause on or before the 28th day of October, 1907, why the prayer of said petition should not be granted; providing that in default of such answer "said parties, and each of them, and all other person or persons shall be forever barred from any and all right, title, interest," etc., and that notice of the order be pub-

lished for three consecutive weeks in the "Examiner," a weekly newspaper published in and for Douglas county, Nebraska. October 19, 1907, due proof of publication of the above order was made. February 17, 1908, a decree was entered in the county court construing the will and holding the tenth clause to be void and incapable of execution. March 12, 1908, the executors filed in the district court a transcript on appeal. May 29, 1909, the unnamed heirs filed in the district court their petition praying for a construction of clauses 10 and 13 of the will. June 14, 1909, the executors filed a motion to strike the petition of the unnamed heirs, on the ground that it raised other and different issues from those tendered and determined in the county court. This motion stood undisposed of until November 27, 1909, wl·n leave was given the executors to withdraw their motion to strike and to plead by December 6, 1909. During the interim between the filing of this motion and the withdrawal of the same, and on October 25, 1909, a petition of intervention in the name of the attorney general was filed, as stated in the majority opinion. On March 27, 1909, a motion was filed by the unnamed heirs to strike the petition of the attorney general from the files, for the reason that neither he nor the state nor the relators were parties to the suit and had no rights or interest entitling them to intervene, and that the case was now pending in that court on appeal from the county court. November·3, 1909, an amended petition of intervention was filed in the name of the attorney general, as stated in the opinion. On July 15, 1910, an appeal bond was filed in the name of the attorney general. On July 21, 1910, an appeal in the name of the attorney general was filed in this court. December 17, 1910, the unnamed heirs filed a cross-appeal, and on December 21, 1910, the executors filed their cross-appeal. After the appeal had been lodged in this court, appellees (the unnamed heirs) moved to dismiss the appeal upon several grounds, which motion was disposed of as stated in the majority opinion.

In their brief and in their oral argument at the bar,
appellees renew their contention that the district court
for Douglas county erred in overruling their motion to
strike the petition of intervention of the attorney general,
and in allowing him to intervene in said cause in the dis-
trict court; that the district court erred in overruling
their demurrer to the petition of intervention of the
attorney general; and insist that the attorney general,
*"sole appellant herein,* has no interest, direct or indirect,
of a beneficial or pecuniary character in the subject mat-
ter in litigation herein, and therefore is not, and cannot,
be prejudiced by any decree or judgment entered herein
in the district court for Douglas county, Nebraska, and
hence possesses no right of appeal therefrom to this
court."

This contention, which meets us at the very threshold
of the case, is sound and should be sustained. It is con-
tended by the appellees that neither the state nor the
people of the state nor the attorney general in his
official capacity had any such interest in the charity,
sought to be established by the tenth paragraph of
the will, as would have entitled the attorney gen-
eral to appear at any stage of the proceedings; and,
further, that, even if he might properly have appeared
before trial in the county court, he could not do so after
there had been a full and complete trial in that court and
the case taken to the district court on appeal. Section
9489, Ann. St. 1911, provides: "The attorney general
shall appear for the state, and prosecute and defend all
actions and proceedings, civil or criminal, in the supreme
court, in which the state shall be interested or a party,
and shall also, when requested by the governor, or either
branch of the legislature, appear for the state and prose-
cute and defend in any other court, or before any officer,
any cause or matter, civil or criminal, in which the state
may be a party, or interested." Section 4778 provides:
"It shall be the duty of the attorney general to appear
and defend actions or claims against the state. He may

require the assistance of the district or prosecuting attorney of the district or county wherein the action is brought, and in any case of importance or difficulty the governor or chief officer of the department or institution to which it relates may retain and employ a competent attorney to appear on behalf of the state." It is thus made the duty of the attorney general to himself appear in all of the matters included within the sections above quoted. No power is given him anywhere in the statute to delegate his duties to private counsel. If that necessity ever arises, section 4778 prescribes who may retain such counsel. Moreover, in the present case, so far as the record before us discloses, the attorney general himself never actually appeared at any stage of the proceedings. He did not sign or verify either the original or amended petition of intervention. He did not sign the motion for a new trial, nor the appeal bond, nor the briefs filed in this court, nor did he appear upon the oral argument at the bar to argue the case. All of these things were done in his name by the private counsel who appeared for the interveners, McCarthy, Brown and St. Onge. It is apparent that counsel were in doubt as to their ability to establish the right of the three ladies named to file a petition of intervention, and that the name of the attorney general was borrowed by them with the thought that, if they failed to establish the right of their private clients, they might succeed under the protecting name of the attorney general. This the statute does not authorize.

After a careful examination and consideration of the will and the record of the case as it then stood, together with the amended petition of intervention, upon which the case went to trial in the court below, it seems clear to me that there was nothing to justify the appearance of the attorney general in that controversy. Upon this point I think:

1. That, under the tenth clause of the will set out. it cannot be held that the charity thereby sought to be

established was clearly a public charity. Treating that clause as valid, as contended for by the intervener, there is nothing in the wording of it to indicate that it was the intention of the testator to make it a public charity. The bequest was to his executors in trust, and the direction was that, with the fund thus bequeathed to them, they were to purchase a site and build thereon a home for poor, working girls, expending not more than one-half of the bequest for the purchase of the site and erection of the building, and to invest the balance in interest-bearing securities, and to apply the interest derived therefrom to the support of said charity. Were the working girls to be received in this home free of all charge, or should they be required to pay a modest consideration for the use of the home? Could any poor, working girl. whether worthy or not, demand admission to the home? Were their qualifications for admission to be passed upon by some public official, or by the trustees named in the will? Was the home thereafter to depend upon public taxes for support, or was it the intention of the testator, with the aid of the interest upon one-half of the bequest, and the receipts of the home from those who might be admitted, to make the home self-supporting? In short, I think the charity thus attempted to be created was in every essential a private, and in no respect a public, charity. I do not think the attorney general had any more right to intervene in behalf of that charity than he would have had to intervene for the Creighton College, which received $500,000, or the St. Joseph Hospital, which was to be the beneficiary of $200,000. In *Attorney General v. Soule*, 28 Mich. 153, it is held: "The state is not authorized, through its law officer, to bring a suit in equity, adverse to all private parties and interests, to enforce a gift by will to charitable uses, unless the gift be definitely to a charity such as equity recognizes, and definitely to a public charity. The state, no less than other prosecutors, must appear on the face of the record to be entitled to prosecute, or the proceeding

must fail in consequence of the irrelation of the plaintiff to the subject of the action." "The question is, not," says Sir William Grant, in *Morice v. Bishop of Durham,* 9 Ves. Jr. (Eng.) *399, "whether the trustee *may* not apply it upon purposes strictly charitable, but whether he is *bound* so to apply it." And in *James v. Allen,* 3 Mer. (Eng.) 17, he says, further: "If the property might, consistently with the will, be applied to other than strictly charitable purposes, the trust is too indefinite for the court to execute." As said by the Michigan court: "If the ambiguity involves the quality of the charity as public or private, the same reasons and principles must apply, where the right to maintain the suit depends upon its being public, and if the fund may consistently with the will be applied to a purpose not public, the attorney general cannot interpose to compel a public application."

Mr. Creighton was known as a devout Catholic. It is a matter of public notoriety that his benefactions to the institutions of that denomination had been so great that he had been invested with a title by the Pope. The two gentlemen named as trustees are also well known to be prominent members of that church. His confidence in them was such that he named them executors without bond. He imposed only two restrictions upon them as trustees—one that the site and building should not cost more than half of the bequest, and the other that the remainder should be invested for the support of the home to be established by them. Everything else in connection with the scheme he had in mind, as to the establishment, and the management of the home when established, was left in the hands, and consequently to the judgment, of the trustees. If they, knowing the testator's love for his own denomination, and in view of the fact that all of the other charities made beneficiaries by the will were under the control of various Catholic organizations, saw fit to admit to that home none but poor, working girls of the Catholic church, they clearly would be within the clause

of the will under consideration. Would such a home be considered a public charity, such as would warrant intervention by the state? Clearly not. If, then, the fund bequeathed might consistently with the will be applied to such a home, it cannot be held that the trust created was for a "definitely" public charity, and, hence, it is too indefinite to warrant intervention by the state.

2. If the attorney general had a right to intervene in this controversy, could he wait until the case had been fully tried and decided in the county court, and until the executors had prosecuted their appeal to the district court, and then intervene in that court? Section 50a of the code provides: "Any person who has or claims an interest in the matter in litigation, in the success of either of the parties to an action, or against both, in any action pending or to be brought in any of the courts of the state of Nebraska, may become a party to an action between any other persons or corporations, either by joining the plaintiff in claiming what is sought by the petition, or by uniting with the defendants in resisting the claim of the plaintiff, or by demanding anything adversely to both the plaintiff and defendant, either before or after issue has been joined in the action, and before the trial commences." In *Reischick v. Rieger*, 68 Neb. 348, we held that the county court has exclusive original jurisdiction of all probate matters, that the construction of a will is a probate matter, and that in such matters the district court has no original jurisdiction. In the light of this holding, the soundness of which cannot be questioned, the district court, in a case of the kind under consideration, is an appellate court; and I do not think the fact that upon such appeal it tries the case *de novo* in any manner changes the situation. The case in that court must be tried upon the same issues presented and between the same parties who appeared in the court of original jurisdiction—the county court. The attorney general, like all others claiming any interest in the construction of the will under consideration, was bound to

know of the pendency of the proceeding in the county court. He was chargeable with the notice given by the county court to appear and assert his contention on or before the date named in such notice. He failed to do so, but waited, not simply until the trial commenced, but until the case was finally determined in that court, and until an appeal had been prosecuted therefrom to the district court, before attempting to intervene. In *Blatchford v. Newberry,* 100 Ill. 484, in the fourth paragraph of the syllabus, it is held: "In a cause brought to this court by appeal, none save such as are parties to the record in this court have a right to be heard. If there are interests such as would make it proper for other parties to intervene in the cause, such intervention must begin in the court of original jurisdiction, and cannot be allowed in this court." In the opinion, beginning on page 492, it is said: "The attorney general asks leave to join in this application, and insists that the public have interests involved in this cause, and he urges a rehearing that he may have an opportunity to assert, support and vindicate the same. We are of opinion that in a cause brought here by appeal, none save such as are parties to the record in this court have a right to be heard. If the interests of the public be such that the attorney general may properly intervene in this ligitation, we think such intervention must begin in the court of original jurisdiction, and cannot be allowed here." The fact that in that case the circuit court was the court of original jurisdiction, and that the attempted intervention was in the supreme court, does not make the case different in principle from the case at bar. I think that in this case the attorney general had no more right to intervene in the district court, after the case had been adjudicated in the court of original jurisdiction and appealed to that court, than he would have to intervene in this court, had he waited until the appearance of the case here. In *Cowan, McClung & Co. v. Lowry,* 75 Tenn. 620, in the first paragraph of the syllabus, it is held: "Where a garnishee

appeals from a justice's judgment against him, it is error
in the circuit court to allow the judgment debtor to in-
tervene, on his motion, as a defendant in the garnish-
ment proceedings. His remedy was to appeal from the
judgment." In *Henry, Lee & Co. v. Cass County Mill &
Elevator Co.*, 42 Ia. 33, it is said: "The right to inter-
vene is purely a statutory right, and it must be exercised
at the time, and in the manner, the statute prescribes."
In *Chase v. Evoy*, 58 Cal. 348, 355, it is said: "The right
to intervene is purely statutory, and the statute prescribes
the mode of exercising it." In *Fischer v. Hanna*, 8 Colo.
App. 471, 485, the above extract from *Chase v. Evoy* is
quoted with approval. I think the attempted interven-
tion was too late.

3. In addition to what has been said upon this question,
I think it clearly appears from the record that there was
no necessity for intervention either by or in the name of
the attorney general at the time such intervention was
made. At every stage of this case, since the will was
filed for probate, the executors have been represented by
able counsel, who appears to have at all times honestly
and ably attempted to have every provision in the will of
Mr. Creighton sustained and his large estate distributed
as therein directed. It further appears that at all times
the executors have followed his advice and acted under
his directions. If the executors had been consulting their
own financial interests, they would not have appealed
from the judgment of the county court, as the decree of
that court would have afforded them ample protection
in distributing the fund covered by the tenth paragraph
of the will. The fact that, after they had appealed, they
submitted to the county court a proposition of com-
promise which had been made to them by the unnamed
heirs is no evidence of any intention on their part to fur-
ther their own private interests at the expense of the
trust fund. To my mind, it is the very reverse of that.
The questions contended for were far from being clear
either way, and the executors would have as much reason

46

to expect that the judgment of the county court would be affirmed on appeal as they would have to believe that it would be reversed, and, if affirmed, they would participate in the distribution of the entire fund. Instead of refusing the offer of compromise upon their own responsibility, they did just what any honorable executors would have done under like circumstances, viz., submitted it to the county court for its instruction. While this was pending, they did not fail to protect their rights in the district court. In the amended petition of intervention, it is said that the executors had "failed to demur to or answer said petition." The record shows, however, that, while this statement may be technically true, in the sense that they had not filed any paper denominated a "demurrer" or "answer," they had, as a matter of fact, filed a motion to strike the petition upon grounds which were in no manner frivolous. This motion, until disposed of, would stay all proceedings under the petition as effectually as a demurrer. The motion was filed within less than three weeks after the filing of the petition. The date of the filing is June 14, 1909, just on the eve of the summer vacation, which is taken annually by that court. The motion filed by them had not been passed upon when the court adjourned for that term. When the first petition of intervention was filed, the October term of the district court had been in session less than one month. The executors' motion to strike had not yet been passed upon. The petition of intervention does not disclose any facts indicating that, from the time of the filing of their motion to strike, on June 14, to the time the petition of intervention was filed, on October 25, the executors or their attorney had been guilty of any negligence, or that the delay in acting upon the motion was due to either their intentional neglect or indifference. After the attorney general filed his petition of intervention, thereby joining issue with the petitioners, and thus waiving the right, so far as intervener was concerned, to insist upon the motion to strike, counsel for the executors obtained

·leave to withdraw the motion and to plead within ten days
thereafter, within which time an answer was filed vigor-
ously assailing the petition of the unnamed heirs on every
point.   It therefore appears that the executors, from the
time their appeal was lodged in the district court until
the final hearing, were never in default of a pleading for
a single moment of time, but were following up their ap-
peal with all reasonable diligence.   The record upon its
face shows an entire absence of any necessity for interven-
tion by or for the attorney general.   Viewed from any
standpoint, I am unable to discover any right or justifica-
tion for this intervention.

4. The attempted appeal of the attorney general was
in his name alone, and did not purport to be for the rela-
tors McCarthy, Brown and St. Onge.   Had it done so, it
could not have availed them anything, for the reason that
more than six months had elapsed from the entry of the
judgment dismissing their intervention and the filing of
the appeal in this court.   Hence, they could not, under
any circumstances, have any standing here.   *Harman v.
Barhydt*, 20 Neb. 625; *Shold v. Van Treeck*, 82 Neb. 99.

5. The cross-appeal filed by the unnamed heirs and the
like appeal filed by the executors were both filed more
than six months after the entry of the judgment in the
district court, and hence have no standing in this court
as independent appeals.   The only standing either of
them ever had was as a cross-appeal.   They therefore re-
lied for life and standing in this court upon the original
appeal.   With that prop removed, eliminated from the
case, the cross-appeals have nothing to attach to or rest
upon.   As they followed the original appeal into court,
they should follow it out of court.   The only right of
appeal from a judgment of the district court to this court
is to be found in section 675 of the code, which provides
that a transcript shall be filed in this court within six
months after the rendition of the judgment or decree, or
·within six months from the overruling of a motion for a
new trial.   In *Farrar v. Churchill*, 135 U. S. 609, the

court say: "Cross-appeals in equity must be prosecuted like other appeals; and although they may be taken and allowed after removal of the cause, on appeal, to this court, yet that cannot be done after the lapse of two years from the date of the decree." It would seem to be elementary that we cannot permit a litigant to file in this court an appeal from a judgment of the district court, by whatever name it may be called, after the expiration of six months as provided in section 675 of the code. A cross-appeal is incident to the main appeal, and hence is dependent thereon for standing in the appellate court. If there is no appeal here, then a so-called cross-appeal is not a cross-appeal at all, and would have to stand or fall as an independent appeal. There appears to be serious doubt whether, even in a case where a cross-appeal is filed within the six months, it could have any standing when the appeal is dismissed. Such is clearly the holding in *Crawford's Adm'r v. Bashford*, 16 B. Mon. (Ky.) 3. The opinion in that case says: "It is the opinion of the court that when the appellant or plaintiff in error, in this court, shall have his appeal or writ of error dismissed, whether upon his own motion or for other cause, in such case it follows, as matter of course, that the whole case is out of court, including the cross-errors, should any have been filed by the appellee or defendant in error, whether in the clerk's office or with leave of the court." In concluding the opinion, it is said: "Wherefore, if the appeal or writ of error be dismissed by the court, upon the motion of the appellant or plaintiff in error, or for other sufficient cause, then, of course, the cross-errors are *coram non judice*." It may be that the Kentucky court went too far in that holding, but, whether so or not, it is clear that, when an appeal has been dismissed, a cross-appeal, filed long after the expiration of six months, falls to the ground and cannot be considered for any purpose, this court being entirely without jurisdiction in such a case. Any party to a judgment in the district court may prosecute appeal to this court, pro-

vided he avails himself of that right within the statutory six months; but I do not think we have any right to say that he may stand idly by, permit the six months to elapse, and then come into this court by cross-appeal and say that he too has a grievance in that case upon which he desires the affirmative action of this court; and this is peculiarly so in a case like the one at bar where the appellant was an interloper in the court below, whose intervention the cross-appellants had been strenuously objecting to in that court, and are still objecting to in this court. That this court has a right to dismiss an appeal by one who was not entitled to be made a party in the district court, and who has no rights to be affected by the proceedings had in that court, is clear. *Auvil v. Iaeger,* 24 W. Va. 583; *McClure v. Maitland,* 24 W. Va. 561, 580; *McMurray v. State Bank,* 74 Mo. App. 394; *Cowherd v. Kitchen,* 57 Neb. 426, 436, where we said: "But these appellants were not prejudiced by the order of discharge, and it is elementary that one cannot appeal from a decision, however erroneous, which does not affect his substantial rights;" and *Sturtevant Co. v. Bohn Sash & Door Co.,* 59 Neb. 82, where we said: "One not prejudiced by a judgment cannot obtain a review thereof." The attorney general had no right to intervene in the court below; consequently he was not prejudiced by the judgment in that court, and hence cannot obtain a review in this court. This being true, the motion to dismiss his appeal should be sustained. That being done, there is no case left, in which an appeal has been filed by any one in this court within six months from the rendition of the judgment below. The fact that section 675 of the code declares that "the filing of such transcript shall confer jurisdiction in such case upon the supreme court" does not mean that the filing of a transcript by one who has no right to appeal will give the court jurisdiction, after he has been dismissed with his appeal, to consider and determine questions raised by another upon a cross-appeal filed after the time permitted by statute.

The only case we have found, which is at all adverse to the views above set out, is *Feder v. Field,* 117 Ind. 386, where it is held: "The dismissal of an appeal by the appellant does not carry the case so far as it is affected by an assignment of cross-errors. The code makes no provision for the assignment of cross-errors by the appellee, but the practice has been so long recognized that it has become one of the unwritten rules of procedure." In that case the question as to whether the cross-errors were filed before or after the expiration of the time allowed by statute for appeal was not raised, and hence the case cannot be considered as an authority upon that point. If it had been made to appear that the cross-errors were assigned after the time within which appellees could affirmatively have obtained a standing in court, it seems to me the Indiana court would have been compelled to hold as was held by the United States supreme court in *Farrar v. Churchill, supra.*

The motion of appellees to dismiss the appeal prosecuted in the name of the attorney general should be sustained and the appeal dismissed. The cross-appeals of the executors and of the appellees should likewise be dismissed.

BARNES, J., concurs in the above dissent.

REESE, C. J., concurring in dissent.

I concur in this dissent upon the ground that the application to intervene was not made within the time required by the section of the statute quoted in the dissenting opinion, and therefore the attorney general never had any right to be heard. The statute is plain that intervention must begin in the court of original jurisdiction, and cannot be allowed in an appellate court to which, after judgment, the cause has been appealed. Having had no standing in the district court, the intervention has none here.

As to whether it was the purpose of the testator to

create a public or private charity, I do not find it necessary to express an opinion. As applied to this case, the authorities are not entirely harmonious.