ELDRED *v.* BANK.

1. The court adheres to the doctrine that a judgment on a note or contract merges the note or contract, and that no other suit can be maintained on the same instrument.
2. Such a judgment, when binding personally, can be introduced in evidence and relied on as a bar to a second suit on the note.

3. When a defendant has filed a ..ea to the merits, and afterwards, by leave of the court, withdraws his plea, that does not withdraw his appearance, and he is still in court so as to be bound personally by a judgment rendered against him in the action.

4. Special circumstances of an alleged misleading of the court and opposite counsel by a statement of counsel, considered as a reason for refusing to reverse a judgment manifestly erroneous, and found to be insufficient.

5. But though the judgment is reversed and there does not appear to have been any intent to deceive, the plaintiff in error, under the circumstances, recovers no costs in this court.

Error to the Circuit Court for the Eastern District of Wisconsin; the case being thus:

A statute of Michigan known as the Joint Debtor Act* thus enacts:

"1. In actions against two or more persons, jointly indebted upon any joint obligation, contract, or liability, if the process issued against all of the defendants shall have been duly served upon either of them, the defendant so served shall answer to the plaintiff; and in such case the judgment, if rendered in favor of the plaintiff, shall be against all the defendants, in the same manner as if all had been served with process.

"2. Such judgment shall be conclusive evidence of the liability of the defendant who was served with process in the suit, or who appeared therein; but against every other defendant it shall be evidence only of the extent of the plaintiff's demand, after the liability of such defendant shall have been established by other evidence."

This statute being in force, the Michigan Insurance Bank, on the 14th of August, 1861, sued Anson Eldred, Elisha Eldred, and Uri Balcom, trading as Eldreds & Balcom, in the court of Wayne County, Michigan, as indorsers on a promissory note for $4000. On the same day a writ of attachment was issued, and the sheriff returned to it that he had attached certain property, but that he was unable to find any of the defendants in his bailiwick. Publication-notice under the laws of Michigan was given, and thereupon the defendants' appearances were entered in the Common Rule Book by the attorney of the plaintiff, under the practice of Michigan, and

---

* Compiled Laws of Michigan of 1857, vol. 2, chap. 133, page 1219.

a declaration, to which a copy of the note sued on was annexed, filed December the 16th, 1861. The defendant, *Anson* Eldred, filed a plea of non-assumpsit, with notice of set-off, December 27th, 1861, and demanded a trial.

On the 22d of April, 1862, as the record of the case stated, the cause came on to be heard, and the plea of the defendants theretofore pleaded by them was withdrawn, and the default of *Elisha* Eldred and Uri Balcom entered, and on the 10th day of May the said default was made absolute. On the 13th of May, the record continues:

"The plea of the defendant, *Anson* Eldred, heretofore pleaded by him, having been withdrawn, and the default of the defendants, Elisha Eldred and Uri Balcom, having been duly entered, and the same having become absolute, and the damages of the said plaintiff, on occasion of the premises, having been duly assessed at the sum of $4211 over and above their costs and charges by them about their suit in this behalf expended; therefore, it is considered that said plaintiffs do recover against said defendants their damages aforesaid, together with their costs aforesaid to be taxed, and that said plaintiff have execution therefor."

In this state of things the bank brought this, the present suit, in the court below, on the same note against the same Anson Eldred, Elisha Eldred, and Uri Balcom. The declaration contained a special count on the note against the Eldreds and Balcom, as indorsers, and the common counts with a copy of the note annexed and notice that it would be given in evidence under them. *Anson* Eldred, who alone was served or appeared, pleaded the general issue; and the case came on for trial. The plaintiffs having offered the note sued upon, and proof tending to show presentment of it for payment, dishonor, and notice to the indorsers, and having rested their case, the defendant, who had given some proof tending to show a fraudulent alteration in the note, then offered in evidence the record of the above-mentioned suit on the same note in the Wayne County Court:

1st. As corroborative proof that the note was fraudulently made.

2d. As being a *bar* to recovery on this note in suit.

The plaintiffs' counsel objected to the records being received.

The bill of exceptions proceeded : ·

" The defendant's counsel, in answer to a question from either the court or counsel, admitted that the said suit was an *attachment suit, and that there was no personal service of process on the defendant.*"

The court after this overruled the plaintiff's objection and admitted the record in evidence. And, in charging the jury, refused to charge them—as the defendant asked that they should be charged—that the judgment was a bar to the action on the note now sued on.·

Judgment having gone accordingly for the bank, Anson Eldred brought the case here on error; the error assigned being the refusal of the court to instruct the jury that the judgment was a bar.

In the case of *Mason* v. *Eldred,** this court announced its adherence to the general doctrine that when a judgment was recovered on a promissory note in a court of competent jurisdiction the original cause of action was merged in the judgment, and such a judgment was a bar to any future action on the note; but said that by the statute law of Michigan this effect was not given to the judgment as to parties to the note who were not served in the first suit nor had personally appeared.

In the case now before the court the question was whether, by the record of the suit in the Wayne County Court, Anson Eldred was before that court, in Michigan, when the judgment was rendered against all the defendants, so as to bind him personally as if he had been served with notice.

*Mr. J. P. C. Cottrill (a brief of Mr. J. W. Cary being filed), for the plaintiff in error:*

1. The appearance of Anson Eldred in the suit in the

---

* 6 Wallace, 231.

Wayne County Court, and his pleading to the merits, was equivalent to personal service of process, and gave to the Michigan court full jurisdiction of his person (which was all that was necessary to be acquired in order to render a valid judgment), as also of his cause. His subsequent withdrawal of his plea could not divest the court of the full jurisdiction that it had previously acquired.[*]

2. The judgment afterwards obtained was admissible in evidence under the plea of the general issue, and was a bar to this, it being another suit on the same note there sued and recovered upon.[†]

*Mr. A. Finch, contra:*

1. The only appearance entered by the defendant, in the Wayne County suit, was by the filing of a plea. The court, upon motion of the defendant's attorneys, permits the plea to be withdrawn. Is not that the same, in legal effect, as if the order had been that the defendant have leave to withdraw his appearance? There is no doubt that a court in which an action is pending has the right to permit a party to withdraw his appearance, and if the withdrawal is allowed, the order must be held conclusive until vacated or set aside by a proper proceeding. It cannot be reviewed in another and different action, in another court.

In *Forbes* v. *Hyde*,[‡] it appeared that an answer was inadvertently filed for all the defendants in the suit. The attorneys upon discovering the mistake made application to the court to withdraw *the answer* and file another, limiting their appearance to the defendants whom they represented and for whom they intended to answer. The motion was granted. In another action the record was offered in evidence. It was

---

[*] Pollard & Pickett v. Dwight, 4 Cranch, 421; Farrar & Brown v. United States, 3 Peters, 459; Toland v. Sprague, 12 Id. 331; Shields v. Thomas, 18 Howard, 253; Jones v. Andrews, 10 Wallace, 327.

[†] Mason v. Eldred, 6 Wallace, 231.

[‡] 31 California, 346; and see Dubois v. Glaub, 52 Pennsylvania State, 242; Lodge v. The State Bank, 6 Blackford, 558; Michew v. McCoy, 3 Watts & Sergeant, 502.

objected to on the ground that it appeared the court had never acquired jurisdiction of the person. The objection was overruled, and the record was admitted in evidence in the lower court. On error, it was held improperly admitted. The opinion says, as to the *effect of the withdrawal of the answer*:

"Upon the discovery of the mistake, upon application, and a proper showing promptly made to the court, and by order of the court, the mistake was corrected and the answer, and *consequently the appearance involved in the filing, were withdrawn.* After the correction of this mistake, *the record, in legal contemplation, stood as though it had never occurred, and there can be no reasonable ground for holding that the court, after the answer was thus withdrawn, had jurisdiction, in consequence of the inadvertence. The plaintiff was in no way injured.* The way was open to him to proceed in the proper mode, as he had before commenced to do, to obtain jurisdiction, and he did proceed, in all respects, as though no answer had been filed."

2. The statement of the counsel of the defendant at the time when he offered the copy of the record in evidence—and when the court made an inquiry of him whose obvious and sole purpose was to obtain a true and full knowledge of the nature of the record thus offered by him—that it was "*a suit commenced by an attachment, and that there was no personal service of process,*" was a representation of such a character, and made under such circumstances, that to allow the defendant now to allege that the said record shows an appearance duly entered in the suit by the defendant, would be to impute a fraud by the learned counsel of the defendant upon the court below. It would be, in effect, permitting the defendant to allege, as a ground of reversal, a fact which he must have known was in the record when he offered it, and which fact he must have intentionally suppressed.

The defendant ought not to complain if the presiding judge assumed the record to be what his counsel represented it to be. His statement, indeed, could have left no other impression upon the judge than that it was a record affecting only

the property attached, and not creating any personal liability on Anson Eldred or in any way binding on him. It is certain that the presiding judge, and the counsel for the plaintiff, were led by the statement of the counsel to believe that this was the fact. Now, the rule of law is well settled that solemn admissions made by counsel in the progress of a trial conclude the party making them.*

Mr. Justice MILLER delivered the opinion of the court.

It is argued by the counsel of the defendant in error that the withdrawal of the plea of Anson Eldred left the case as to him as though he had never filed the plea, and that never having been served with process he was not liable to the personal judgment of the court.

We do not agree to this proposition. The filing of the plea was both an appearance and a defence. The case stood for the time between one term and another with an appearance and a plea. The withdrawal of the plea could not have the effect of withdrawing the appearance of the defendant, and requiring the plaintiff to take steps to bring that defendant again within the jurisdiction of the court. Having withdrawn that plea he was in condition to demur, to move to dismiss the suit if any reason for that could be found, or to file a new and different plea if he chose, either with the other defendants jointly, or for himself. He was not, by the withdrawal of the plea, out of court. Such a doctrine would be very mischievous in cases where, as it is very often, the first and only evidence of the appearance of a party is the filing of his plea, answer, or demurrer. The case might rest on this for a long period before it was ready for trial, when, if the party could obtain leave of the court to withdraw his plea (a leave generally granted without objection), he could thereby withdraw his appearance, the plaintiff is left to begin *de novo.*

---

* Vandervoort *v.* Smith, 2 Caines, 164; Hoyt *v.* Gelston, 13 Johnson, 141; Fernald *v.* Ladd, 4 New Hampshire, 370; Morrish *v.* Murray, 13 Meeson & Welsby, 52; Shutte *v.* Thompson, 15 Wallace, 151.

We are of opinion that the record of the suit in Michigan shows a valid personal judgment against Anson Eldred, and that that judgment was a bar to recovery in the present suit.

But it is further urged that the present judgment should not be reversed because the court was prevented from giving the instructions asked by defendant's counsel by being misled by that counsel as to the character of the judgment. The bill of exceptions, immediately after what is said about the purposes for which the transcript of the judgment was offered, proceeds as follows: " The defendant's counsel, in answer to a question from either the court or counsel, admitted that said suit was an attachment suit, and that there was no personal service of process on defendant."

It is argued that this was equivalent to a declaration that it was rendered without notice or personal appearance. This impression may have been produced on the opposite counsel and the court may have shared in it. But it is very clear that it was not so equivalent, and that what he said was perfectly consistent with what is now found to be in that transcript, namely, the appearance of defendant and a valid personal judgment against him. Many attachment suits are accompanied by the appearance of defendant in the progress of the suit, though not served with process or notice.

Besides, the counsel for defendant had stated that he offered it as a bar, and both counsel and court had their attention turned to the fact that it could be no bar without service or appearance; and after all this was over and the record admitted he asked the court for the instruction which was refused and which could only be founded on the idea that it was valid as a personal judgment. The record was open to inspection of counsel opposed, and it would be a very dangerous practice to hold, under these circumstances, that counsel had intentionally misled his opponent and the court in this matter.

There seems to be an entire absence of motive to deceive the court or counsel. What was said was at the time the

record was offered in evidence as a bar. To show that it was a valid personal judgment was to secure its admission, while to show it was not was to render its admission doubtful.

So, in regard to the instruction, there could be no object in misleading the court other than to have a judgment rendered against his client that he might have the satisfaction of reversing it, a motive hardly to be imputed to counsel in this court. It seems much more reasonable to infer that counsel doubted whether the withdrawal of the plea did not withdraw the appearance of defendant, and, therefore, did not say anything on that point.

We do not think that under these circumstances we can permit a judgment to stand, manifestly erroneous, where there is a complete bar found to it in the record, when the effect would be to close to defendant entirely this defence, while to reverse it would only leave the other party where he would be had nothing been said.

He has not been injured by the statement of the opposing counsel. Shall he profit by it to the extent of having an erroneous judgment confirmed?

JUDGMENT REVERSED, but without costs to either party in this court, and a new trial granted in the Circuit Court.