## O'CONNOR et al. v. STANLEY.
### No. 9074.

Circuit Court of Appeals, Eighth Circuit.
Nov. 18, 1931.

James M. Johnson, of Kansas City, Mo., and Bernard McNeny, of Red Cloud, Neb. (Donald W. Johnson, of Kansas City, Mo., on the brief), for appellants.

C. A. Sorensen and L. R. Newkirk, both of Lincoln, Neb., for appellee.

Before KENYON and GARDNER, Circuit Judges, and REEVES, District Judge.

GARDNER, Circuit Judge.

In this case, appellants, who were plaintiffs below, are seeking to establish their claim to the estate of John O'Connor, deceased. The appellee is the administrator de bonis non of that estate, having been appointed as such and substituted as a party defendant in this suit as successor to John Slaker, now deceased. We shall refer to the parties as they appear in the lower court.

The bill of complaint contains three counts. The first count alleges that John O'Connor departed this life at Hastings, Neb., August 17, 1913, leaving a last will and testament, by which he devised his property, consisting of both real and personal property of a value exceeding $125,000, to the plaintiffs as his sole legatees and devisees. The second count is bottomed on a claim of heirship, and in the third count plaintiffs seek to quiet title to the property as against the defendant administrator. Originally the state of Nebraska was named as a party defendant, but on a prior appeal this court held that the suit could not be maintained as against the state. That appeal was from an order and judgment of the lower court dismissing the action, entered upon motion of the defendants. This court held that the alleged cause of action set out in the first count was not within the jurisdiction of the federal court, because it in effect sought to probate a will, but that the second and third counts of the bill of complaint stated causes of action that were cognizable by the federal court. O'Connor v. Slaker (C. C. A.) 22 F.(2d) 147.

After the cause was remanded to the lower court, the defendant filed answer to the second and third counts. The alleged heirship of the plaintiffs was denied, and defend-

ant pleaded res judicata and consequent estoppel; it being alleged that all matters claimed and relied upon by plaintiffs had been finally adjudicated in the state courts of Nebraska, and also that the said John O'Connor died on August 17, 1913, in Adams county, Neb., then a resident thereof, leaving him surviving no widow and no kindred, heirs, or next of kin, and that upon his death all his property became, by escheat, the property of the state of Nebraska, and that it had been so adjudicated by the state courts of Nebraska. Plaintiffs, by reply, denied the allegations of res judicata, and alleged that they had dismissed the proceedings previously instituted by them in the county court of Adams county, Neb., in the matter of the administration of the estate of said deceased, and therefore were not bound by the adjudication set out in the answer. Certain other parties, also claiming to be the sole surviving heirs of John O'Connor, deceased, were permitted to intervene, and on the trial the issues framed· by the foregoing pleadings, as well as those involving the claims of the interveners, were determined in favor of the defendant and against the plaintiffs. From the judgment entered the plaintiffs alone, as distinguished from the interveners, have appealed.

The lower court made no findings, but from the opinion filed it appears that the court considered the claims of heirship asserted by the plaintiffs, as well as the claims of heirship asserted by the interveners, on their merits, and expressed the opinion that these claims of heirship were not supported by the evidence. We have carefully examined the testimony, and are of the opinion that the court was correct in so holding. In view of the conclusion we have reached on other issues presented, however, no good purpose would be served by reviewing the testimony in this opinion, further than to state that we are of the view that it abundantly sustains the lower court. The history of the various phases of this protracted litigation will be found reflected in the following decisions of the state and federal courts: In re O'Connor's Estate, 101 Neb. 617, 164 N. W. 570; In re O'Connor's Estate, 105 Neb. 88, 179 N. W. 401, 12 A. L. R. 199; O'Connor v. State, 110 Neb. 822, 195 N. W. 125; In re O'Connor's Estate, 114 Neb. 266, 207 N. W. 31; In re O'Connor's Estate, 117 Neb. 636, 222 N. W. 57; O'Connor v. Slaker (C. C. A.) 22 F.(2d) 147; Slaker v. O'Connor, 278 U. S. 188, 49 S. Ct. 158, 73 L. Ed. 258.

In support of their claim of heirship, plaintiffs offered in evidence an instrument purporting to be a will executed and published by the deceased at St. Joseph, Mo., on the 10th day of October, 1908. This will, however, had been finally adjudicated to be a forgery (In re O'Connor's Estate, 105 Neb. 88, 179 N. W. 401, 12 A. L. R. 199), and this court on the prior appeal held that plaintiffs, in the absence of a probate of the will, could not recover thereunder. It is claimed that, while the will is rendered inefficacious for some purposes, it is still evidence that decedent had a brother named Charles, who probably had children. While this instrument had been finally adjudicated to be a forgery, that issue was apparently retried by the lower court, and on the testimony the lower court again held the instrument spurious. The will, it should be observed, was denied probate by the county court of Nebraska having jurisdiction of the probate of the estate, not because of any irregularity in the matter of its execution, but because it was a forgery. It was therefore void for all purposes, and the adjudication of the county court of Adams county, which was affirmed by the Supreme Court of Nebraska, was binding and conclusive in all other courts. It would be a remarkable doctrine that an instrument adjudged by a court of competent jurisdiction to be a forgery might, nevertheless, in a subsequent action between the same parties, be considered as proof of any recital contained therein. But not only did the county court of Adams county, Neb., adjudicate this will to be a forgery, but it also adjudicated that the plaintiffs were not heirs of John O'Connor, deceased, and the defendant insists that the plaintiffs are bound by that adjudication, and are therefore precluded from asserting heirship in this case.

The following statutory and constitutional provisions are pertinent as defining the jurisdiction of the county courts of Nebraska, and giving the conditions under which the estate of a decedent resident of Nebraska shall escheat to the estate.

Section 30-102, 1929 Compiled Statutes of Nebraska, provides: "When any person leaving no husband or wife surviving shall die, seized of any real estate, or any right thereto, or entitled to any interest therein in fee simple, or for the life of another, not having lawfully devised the same, it shall descend subject to his debts, in the manner following: * * * Seventh. If the deceased shall leave no kindred nor husband nor wife, the estate shall escheat to the State of Nebraska."

Section 30-103, 1929 Compiled Statutes of Nebraska, provides: "The residue, if any,

of the personal estate shall be distributed in the same proportions to the same persons as prescribed for the descent of real estate."

Section 76-501, 1929 Compiled Statutes of Nebraska, provides: "Upon the failure of heirs the title shall vest at once in the state, without an inquest or other proceedings in the nature of office found."

Section 16, article 6, Constitution of Nebraska, prior to amendment in 1920, provided: "County courts shall be courts of record, and shall have original jurisdiction in all matters of probate, settlement of estates of deceased persons, appointments of guardians, and settlement of their accounts," etc.

As amended in 1920, this section provides: "County courts shall be courts of record, and shall have original jurisdiction in all matters of probate, settlement of estates of deceased persons, and in such proceedings to find and determine heirship," etc. Const. art. 5, § 16.

Section 30-1302, 1929 Compiled Statutes of Nebraska, provides inter alia: "The county court shall, by a decree for that purpose, assign the residue of the estate, if. any, to such other persons as are by law entitled to the same."

Section 30-1303, 1929 Compiled Statutes of Nebraska, provides: "In such decree the court shall name the persons, and the proportions or parts to which each shall be entitled, and such persons shall have the right to demand and recover their respective shares from the executor or administrator, or any person having the same."

Section 30-1304, 1929 Compiled Statutes of Nebraska, provides: "Such decree may be made on the application of the executor or administrator or of any person interested."

[3] Turning now to the proceedings had in the county court in the matter of the estate of John O'Connor, deceased, it appears that on August 27, 1913, the plaintiffs here filed petition, praying letters of administration, and by amended petition filed September 27, 1913, asked for the appointment of Thomas J. Brennan as such administrator. On September 29, 1913, they filed a protest against the appointment of E. D. Livingston as administrator, alleging that they were the only heirs of John O'Connor, and urging the appointment of Thomas J. Brennan. On July 8, 1914, they filed objection to the administrator appearing or participating in litigation with reference to the estate. On July 23, 1922, they filed an amended and supplemental claim of heirship, as children of Charles O'Connor, deceased, brother of John

O'Connor, deceased, praying for decree adjudging them to be the sole and only heirs of John O'Connor, deceased, and as such entitled to the whole of said estate. On December 5, 1923, they filed answer to a petition of one Elizabeth O'Connor Burgoyne and others, who claimed to be heirs of John O'Connor, deceased.

The state of Nebraska, as early as December 6, 1913, and before the original administrators were appointed, filed in the county court its petition in intervention, setting up its claim that John O'Connor died without widow, heirs, or next of kin, and that his estate, therefore, under the laws of escheat, belonged to the state. On June 19, 1914, it filed a protest against the allowance of a purported will, again asserting that John O'Connor died intestate without widow, heirs, or next of kin. On July 8, 1914, the state filed a petition in intervention, contesting the so-called Culivan will. On May 21, 1918, it filed a petition, praying that none of the claimants to the estate be adjudged heirs or kindred of John O'Connor, deceased, and that the court adjudge that deceased died without widow or kindred.

The plaintiffs first invoked the jurisdiction of the county court of Adams county in the administration of the estate, and, as above noted, took active steps in said administration. However, on March 29, 1926, plaintiffs filed in the county court a written dismissal and withdrawal of the petition and claim filed by them asking that they be declared to be the heirs of said John O'Connor, deceased, and a withdrawal of the answer filed by them to the petition and claim of heirship of Elizabeth O'Connor Burgoyne and Katherine Peloquin.

On May 24, 1927, a final judgment and decree was entered in the county court, after due order for and publication of notice, as required by the Nebraska statutes, to all persons interested in the estate of John O'Connor, deceased. This decree was affirmed upon appeal by the district court and by the Supreme Court of Nebraska. In re Estate of O'Connor, 117 Neb. 636, 222 N. W. 57. It adjudged that John O'Connor died intestate, a resident of Adams county, Neb., on the 17th of August, 1913; found and adjudged that proceedings to administer his estate were commenced and legally prosecuted in that court; that due order was made fixing the time within which claims might be filed against the estate; that notice of such order was given as provided by law; that all claims filed against the estate had been paid, and

that all other claims existing or asserted against the estate were barred; that administration had been duly made and completed; that the administrator's final report was true and correct; that John O'Connor died intestate, and that he left surviving him no kindred nor widow, and upon his death all his estate and property, subject only to the payment of debts and expenses of administration, escheated to the state of Nebraska; that the petition and claims of each and all of the persons filed in said matter, claiming to be related to John O'Connor, deceased, and asserting that they were heirs of John O'Connor, deceased, "be and the same are hereby denied and dismissed, and it is decreed that none of said persons are related to or are heirs of John O'Connor, deceased, and each and all persons claiming or to claim relationship to the deceased, or heirship of the deceased, or right, title, interest, or claim in, to or upon the property in the estate of the deceased, should be and they are hereby barred, precluded and prevented from hereafter making or asserting said claims, on any of them, adversely to the State of Nebraska."

Plaintiffs contend that they are not bound by this decree of the county court because (1) they had withdrawn their claim from that court, and were not, therefore, parties to the proceeding; (2) that this court in its former decision, handed down October 10, 1927 [22 F.(2d) 147], has determined that plaintiffs have a right to have their heirship determined in the federal court, which right cannot be destroyed by any action of the state; and (3) that the federal court first acquired jurisdiction, and hence it is not bound by the decision of the state court on the same subject-matter, even though entered before the decision of the federal court.

As to the effect of the so-called withdrawal of the plaintiffs from the administration proceedings, it is observed that no order was entered on this instrument, and it does not purport to withdraw the appearance of plaintiffs in said court, and we think it was ineffectual to deprive the court of jurisdiction, either of the subject-matter or of the persons of the plaintiffs, their appearance not having been withdrawn, and the entire proceeding being without judicial approval or sanction, and apparently without notice to the other interested parties. The petition filed by the plaintiffs in the county court of Adams county, Neb., stated the jurisdictional requirements for the appointment of an administrator of the John O'Connor estate, and conferred upon that court jurisdiction to appoint an administrator and proceed with the administration of the estate. As said by the Supreme Court of Nebraska in In re Glover's Estate, 104 Neb. 151, 175 N. W. 1017, 1019, "The petition of Bartley & Sons contained all the jurisdictional grounds. The court obtained jurisdiction over the subject-matter. The dismissal of Bartley & Sons could not oust the county court of such jurisdiction. * * * The instant the petition is filed the further operation or control of the matter passes out of the hands of the petitioner and into the hands of the court."

In the instant case, the court having acquired jurisdiction, its subsequent proceedings could not be limited by the attempt of the plaintiffs to withdraw their petition. The county court had jurisdiction, and it was its duty, on the completion of the administration, to determine to whom the estate should be distributed, and, as an incident to the exercise of that jurisdiction, it was necessary to determine who were the heirs, if any, of John O'Connor, deceased. It is observed, too, that, while the plaintiffs attempted to withdraw their petition, affirmatively invoking the jurisdiction of the court to determine their alleged heirship, and to withdraw their answer to the petition of certain interveners, they did not withdraw their appearance, and the effect would be the same as the withdrawal of an answer by a party in a court action. By so doing the court would not lose jurisdiction of the party withdrawing such pleading. Eldred v. Bank, 84 U. S. (17 Wall.) 545, 551, 21 L. Ed. 685; Last Chance Mining Co. v. Tyler Mining Co., 157 U. S. 683, 15 S. Ct. 733, 736, 39 L. Ed. 859; Creighton v. Kerr, 87 U. S. (20 Wall.) 8, 13, 22 L. Ed. 309; Ex parte Skinner & Eddy Corp., 265 U. S. 86, 44 S. Ct. 446, 68 L. Ed. 912.

In Eldred v. Bank, supra, in an opinion by Mr. Justice Miller, it is, among other things, said:

"It is argued * * * that the withdrawal of the plea of Anson Eldred left the case as to him as though he had never filed the plea, and that never having been served with process he was not liable to the personal judgment of the court.

"We do not agree to this proposition. The filing of the plea was both an appearance and a defence. The case stood for the time between one term and another with an appearance and a plea. The withdrawal of the plea could not have the effect of withdrawing the appearance of the defendant, and requiring the plaintiff to take steps to

bring that defendant again within the jurisdiction of the court. Having withdrawn that plea he was in condition to demur, to move to dismiss the suit if any reason for that could be found, or to file a new and different plea if he chose, either with the other defendants jointly, or for himself. He was not, by the withdrawal of the plea, out of court. Such a doctrine would be very mischievous in cases where, as it is very often, the first and only evidence of the appearance of a party is the filing of his plea, answer, or demurrer. The case might rest on this for a long period before it was ready for trial, when, if the party could obtain leave of the court to withdraw his plea (a leave generally granted without objection), he could thereby withdraw his appearance, the plaintiff is left to begin de novo."

In Creighton v. Kerr, supra, it is said: "The appearance of the defendant may remain, although the attorneys, by whom it was entered, have withdrawn. Its effect cannot be annulled by such withdrawal. The appearance gives rights and benefits in the conduct of a suit, to destroy which by a withdrawal would work great injustice to the other party."

In Last Chance Mining Co. v. Tyler Mining Co., supra, it is said: "It is said that the defendants did not contest, that they withdrew their answer, and that there was only a judgment by default. But a judgment by default is just as conclusive an adjudication between the parties of whatever is essential to support the judgment as one rendered after answer and contest."

When plaintiffs invoked the jurisdiction of the county court, they must have anticipated that a final decree of distribution would be entered by that court. Such a decree was essential to a complete administration on the estate, and it would be trifling with a court if its jurisdiction so invoked in a proceeding in which others were interested could be swept away by a simple declaration that the party invoking the jurisdiction saw fit to withdraw his pleading. The decree as entered was not on a new cause of action, but was on a matter which inhered in the very nature of the proceeding. The state of Nebraska had throughout the proceedings, and while the plaintiffs were participating therein, asserted, not only that the plaintiffs were not heirs or devisees of John O'Connor, but that he died without such heirs or devisees, and, as a consequence, under the law of Nebraska, of which the plaintiffs must be charged with notice, the property belonged to the state. Not only had the state of Nebraska been contesting the rights of the plaintiffs and asserting its own right throughout these proceedings, but it was within its rights in so doing. In re O'Connor's Estate, 114 Neb. 266, 207 N. W. 31, 36; Burgoyne et al. v. State, 117 Neb. 636, 222 N. W. 57, 59; In re Keller's Estate, 101 Neb. 115, 162 N. W. 511.

In In re O'Connor's Estate, supra, the Supreme Court of Nebraska said: "Under the law of this state, if O'Connor had no heirs to inherit, then his property would escheat and belong to the state. The state was interested, therefore, in seeing that no spurious claimant should be permitted to establish his claim."

And in Burgoyne et al. v. State, supra, that court said: "The real question, in its final analysis, was to determine who was entitled to the property of decedent. The state's claim was adverse to each of the other claimants, and it claimed an interest in the subject-matter of the litigation, namely, the property of John O'Connor, deceased. The right of the state to intervene in such a proceeding is conferred by statute and has been heretofore established by the decisions of this court."

The statutes of Nebraska, section 30-1303, specifically provide that the decree of the county court shall name the persons and the proportions or parts to which each shall be entitled; and by section 30-1304 it is provided that: "Such decree may be made on the application of the executor or administrator or of any person interested." It is quite generally held that probate proceedings to settle an estate are in rem, and as such binding on all the world. In re Creighton's Estate, 91 Neb. 654, 136 N. W. 1001, Ann. Cas. 1913D, 128; Fischer v. Sklenar, 101 Neb. 553, 163 N. W. 861; Brandeen v. Beale, 110 Neb. 686, 194 N. W. 787; In re Glover's Estate, 104 Neb. 151, 175 N. W. 1017; Goodrich v. Ferris, 214 U. S. 71, 29 S. Ct. 580, 53 L. Ed. 914; Christianson v. King County (D. C.) 196 F. 791; Christianson v. King County (C. C. A.) 203 F. 894; Christianson v. King County, 239 U. S. 356, 36 S. Ct. 114, 60 L. Ed. 327.

In Christianson v. King County, 239 U. S. 356, 36 S. Ct. 114, 119, 60 L. Ed. 327, supra, it appeared that the plaintiff was a subject of Norway, and that he was an heir of one Lars Torgerson Grotnes, who died intestate in King county, Wash., and that the county had succeeded to the decedent's property by a decree of escheat. The act of the

Legislature provided that, in case of the death of an intestate leaving no kindred, his estate should escheat to the county in which it was situated. It also appeared that Lars Torgerson Grotnes had changed his name, to conceal his identity, to John Thompson. The heirs of the decedent had no knowledge of their ancestor's whereabouts or death until three years prior to the beginning of the action, and it was conceded that they had been diligent, since receiving this information, in searching for the proofs of decedent's identity and their relationship. The plaintiff had no knowledge of the probate proceedings, and by his suit sought to recover lands which decedent at the time of his death owned, and to quiet title thereto. By statute of Washington it was provided that "in the decree the court shall name the person and the portion, or parts to which each shall be entitled." (Laws Wash. 1862–63, p. 257, § 318.) The opinion is by Mr. Justice Hughes, now Chief Justice, and the issues bear such close analogy to those in the instant case that what is there said seems here apposite. It is there said:

"Those 'by law entitled' to the real estate were described in § 340, * * * which gave the order of taking according to relationship, and in the last paragraph provided for escheat to the county if there were no kindred. It does not seem to be disputed that under this act, if proceedings in a probate court were properly initiated, that court would have jurisdiction to enter a decree determining the interests of heirs and distributing the real estate to those of the kindred, if any, who were found to be entitled to take as provided in this section. * * * But it is contended that the county, asserting escheat, did not claim as successor to the decedent; that the jurisdiction of the probate court ceased as soon as it ascertained that there were no heirs, and that it had no power to declare the escheat and decree distribution to the county. We cannot accede to this view. It is not the case, in a proper sense, of an attempt to determine the title of third persons, that is, of adverse claimants. Stewart v. Lohr, 1 Wash. 341, 342, 22 Am. St. Rep. 150, 25 P. 457. The provision for escheat to the county in case the intestate left no kindred was a part of the scheme of distribution defined by the act, and we cannot doubt that not only had the court the power to determine the interests of the heirs in the real estate to be distributed, but it likewise had the power to determine whether there were heirs, and if it was found that there

were none, to decree distribution according to the statute. * * * It appears that subsequently the probate court, after opportunity had been afforded to discover heirs, entertained a petition of the administrator for final account and distribution. The statutory notice (probate practice act 1863, § 319) was published and on the return day the proceeding was duly continued, and, on hearing, the decree was entered settling the account, finding that there were no heirs, and directing distribution of the real property, as described, to the county of King. This proceeding was essentially in rem. Re Ostlund, supra [57 Wash. 359, 106 P. 1116, 135 Am. St. Rep. 990]; Alaska Bkg. & S. D. Co. v. Noyes, 64 Wash. 672, 676, 117 P. 492; McDowell v. Beckham, 72 Wash. 224, 227, 130 P. 350; Krohn v. Hirsch, 81 Wash. 222, 226, 142 P. 647. It was competent for the court to inquire whether there were heirs, and, if there were such, to determine who were entitled to take according to the order prescribed by the statute, and also, if it was found that there were no heirs, to make the distribution to the county, as the statute required. It is apparent that there was no deprivation of property without due process of law. The court, after appropriate notice, did determine that there were no heirs, and its decree, being the act of a court of competent jurisdiction under a valid statute, bound all the world, including the plaintiff in error. It cannot be regarded as open to attack in this action."

So in the instant case it affirmatively appears that the county court of Adams county, Neb., after appropriate notice in strict conformity to the statutory provisions, determined that there were no heirs. It was a court of competent jurisdiction. If anything can be added to what is said by Mr. Justice Hughes, it may be supplied from the opinions of the Supreme Court of Nebraska, where it is said: "Every one interested is a party in the probate court whether he is named or not, and this is particularly true as to the question of the distribution of the estate." In re Creighton's Estate, 91 Neb. 654, 136 N. W. 1001, 1005, Ann. Cas. 1913D, 128; Fischer v. Sklenar, 101 Neb. 553, 163 N. W. 861.

In the instant case, there is stronger reason for sustaining the jurisdiction of the county court of Adams county, Neb., than in the Christianson Case, because there was in fact a personal appearance by the plaintiffs in that proceeding, and this appearance converted into a personal suit that which

**26**

without their appearance would have been a proceeding strictly in rem.

■ But it is urged that the defense of res judicata is foreclosed by the decision of this court on the former appeal. The former appeal was from an order and judgment of dismissal; the trial court having held that it was without jurisdiction. No answer had been interposed, and the plea of res judicata was not suggested. What this court there said was that the right of the plaintiffs to invoke the jurisdiction of the federal court to adjudicate their heirship, the requisite diversity of citizenship existing and the required amount being in controversy, could not be destroyed by any act of the state. By no possible contortion could this be construed as a holding that the federal court would not accord full faith and credit to the judgment of a state court of competent jurisdiction. The judgment of a state court cannot well be treated as "any action of a state." Such action is evidenced by legislative acts, and not by judicial determinations. That a judgment duly entered by a state court of competent, though concurrent, jurisdiction, is entitled to receive in all federal courts full faith and credit, goes without saying. Christianson v. King County, 239 U. S. 356, 36 S. Ct. 114, 60 L. Ed. 327; Union & Planters' Bank v. Memphis, 189 U. S. 71, 23 S. Ct. 604, 47 L. Ed. 712; Covington v. First Natl. Bank, 198 U. S. 100, 25 S. Ct. 562, 49 L. Ed. 963; Hamilton v. Brown, 161 U. S. 256, 16 S. Ct. 585, 40 L. Ed. 691.

■ There remains to consider the contention that the judgment of the state court is not binding because the present suit was commenced prior to the entry of that judgment. Plaintiffs, as has already been observed, actively participated in the proceedings in the county court until their attempted withdrawal March 29, 1926, a period of nearly thirteen years. They therefore knew of the pendency of that proceeding. The present suit was commenced by them March 29, 1926. The county court of Adams county, Neb., and the United States District Court for the District of Nebraska had concurrent jurisdiction to determine the question of the heirship of the plaintiffs. The proceeding in the Nebraska court was first commenced and its judgment was first entered. But, even if there were some question as to whether the proceeding in the Nebraska court, ultimately culminating in the decree of distribution, was first commenced, there can be no question but that the decree was first entered, and we are of the view that that decree effectually barred plaintiffs' right to any relief in this suit. Schuler v. Israel, 120 U. S. 506, 7 S. Ct. 648, 30 L. Ed. 707; Mitchell v. First National Bank, 180 U. S. 471, 21 S. Ct. 418, 45 L. Ed. 627; Hart Steel Co. v. Railroad Supply Co., 244 U. S. 294, 37 S. Ct. 506, 61 L. Ed. 1148; Keely et al. v. Ophir Hill Consol. Mining Co. et al. (C. C. A.) 169 F. 598, 601; Boatmen's Bank of St. Louis v. Fritzlen (C. C. A.) 135 F. 650, 667.

As said by Judge Sanborn in Boatmen's Bank of St. Louis v. Fritzlen, supra: "The jurisdiction of the two courts was concurrent. That of neither excluded that of the other to try the same issues between the same parties. It is not the final judgment in the first suit, but the first final judgment, although it may be in the second suit, that renders the issues in such a case res adjudicata in the other court."

Finding, as we do, that the judgment of the lower court on the merits of the controversy between the parties is amply sustained by the evidence, and being of the view that the plaintiffs are precluded by the final decree of distribution entered by the county court of Adams county, Neb., and affirmed both by the District Court and the Supreme Court of that state, it follows that the judgment appealed from should be, and is, affirmed.