CRAMER v. PHŒNIX MUT. LIFE INS.
CO. OF HARTFORD, CONN., et al.,
and three other cases. *
Nos. 10786–10789.

Circuit Court of Appeals, Eighth Circuit.
July 6, 1937.

*Rehearing denied Aug. 16, 1937.

Fred E. Fuller, of Toledo, Ohio, and Bruce J. Flick, of Des Moines, Iowa (Welles, Kelsey & Cobourn, of Toledo, Ohio, Havner, Flick & Powers, of Des Moines, Iowa, George D. Welles, of Toledo, Ohio, and H. M. Havner, of Des Moines, Iowa, on the brief), for appellants.

Wayne G. Cook, of Davenport, Iowa (J. R. Lewis, Walter M. Balluff, Lane & Waterman, and Cook & Balluff, all of Davenport, Iowa, on the brief), for appellees.

Before GARDNER, WOODROUGH, and VAN VALKENBURGH, Circuit Judges.

GARDNER, Circuit Judge.

The record presents appeals from two final decrees entered in two suits in equity begun by bills of interpleader. On stipulation of counsel and on order of this court the appeals have been consolidated for hearing in this court.

The suits involve the distribution of the proceeds of two policies of life insurance up-

on the life of Arthur E. Hazeldine. One of these policies was issued by the appellee Phœnix Mutual Life Insurance Company of Hartford, Conn., and the other was issued by the appellee Ætna Life Insurance Company. The insured, a resident and citizen of Scott county, Iowa, died intestate September 22, 1935. The policy in the Phœnix Mutual Life Insurance Company was payable to the "executor, administrator or assignee of the insured," and the policy in the Ætna Life Insurance Company was payable to the "executors or administrators of the insured." Each policy was payable at the home office of the insurer at Hartford, Conn. On September 24, 1935, following insured's death, H. R. Lafferty, a citizen and resident of Iowa, was appointed and duly qualified as administrator of the estate of Arthur E. Hazeldine, deceased, by the district court of Scott county, Iowa, and on November 21, 1935, Charles W. Cramer, a citizen and resident of Connecticut, was appointed and duly qualified as administrator of the estate by a probate court of the state of Connecticut. Each administrator duly filed proof of death with the respective insurance companies and claimed the proceeds of the policies, but neither has commenced any action to recover the proceeds.

Grace K. Hugh, a former wife of deceased, and a resident of Ohio, and Mary E. King, mother of Grace K. Hugh, also a resident of Ohio, who had claims against Arthur E. Hazeldine, assigned them to James S. Coburn, a resident of Connecticut. As to these claims it need only be said that Coburn asserts that Grace K. Hugh and Mary E. King, who were creditors of Hazeldine by contract with him, became the equitable owners of the proceeds of the policies and that by the assignment of their rights to him he became entitled to priority of payment from the proceeds to the extent of the indebtedness to his assignors. On November 27, 1935, Coburn commenced separate actions in the superior court of Hartford, Conn., against each of the life insurance companies, joining Cramer, the Connecticut administrator, claiming equitable ownership of the policies and seeking a recovery thereon. In each of these actions a writ of attachment issued, commanding the sheriff to attach property of the defendant insurance company and of Charles W. Cramer as administrator, to the value of the respective amounts due on the policies. Under these writs the sheriff garnisheed certain banks and made return that the banks disclosed that they were indebted to the insurance companies. He also made return that he had searched for but could find no funds of the defendant Cramer.

At this stage of the proceedings, on December 14, 1935, each insurance company filed its bill of interpleader in the court below, naming as claimants Lafferty, the Iowa administrator, Cramer, the Connecticut administrator, Grace K. Hugh, Mary E. King, and James S. Coburn. The amount alleged to be due on each policy was deposited in the registry of the court, and the court by its order required each claimant to appear and answer and set forth his claim to the fund. The defendant Coburn was enjoined and restrained until the further order of the court from further prosecuting his action in the superior court of Hartford, Conn., against the insurer, and he and the other claimants were enjoined from instituting or prosecuting against it any other suit or proceedings in any state or federal court on account of the policies of insurance involved. The claimants were required to show cause why the order of injunction should not be made permanent.

All of the claimants appeared and answered. Lafferty, as administrator, alleged that he was entitled to the funds and denied the right of any of the other claimants thereto. Cramer, as administrator, alleged that he and Coburn were the only bona fide claimants to the fund and that as they were residents of Connecticut, the jurisdictional diversity of citizenship did not exist. He also alleged that he could not sue nor be sued as administrator in any other state than Connecticut, and that by reason of the actions pending in Connecticut the proceeds of the policies were within the custody of the superior court of Hartford, Conn., and that a lien had attached thereto by these judicial proceedings. Coburn's answer followed substantially that of Cramer. So far as objections to the jurisdiction of the court were concerned, he also alleged that the situs of the funds and the situs of the obligation to comply with the terms of the policies were in Connecticut and that an assignment to him by Grace K. Hugh and Mary E. King vested in him an equitable lien on the proceeds of the policies. Grace K. Hugh and Mary E. King disclaimed all interest in the funds and alleged that Cramer as administrator and Coburn were the only parties entitled thereto.

On May 18, 1936, a decree was entered, adjudging that Lafferty was entitled to the proceeds of the two policies, and on or

about May 20, 1936, the clerk of the United States District Court paid the deposited funds over to Lafferty, the Iowa administrator.

On May 5, 1936, the district court of Scott county, Iowa, after hearing at which all interested parties were represented, entered an order adjudging that Dorothy Gwendolyn Hazeldine was the daughter and only heir of the deceased, Arthur E. Hazeldine.

On March 14, 1936, Coburn filed his claims as assignee of Grace K. Hugh and Mary E. King with the Iowa administrator, and the claims were allowed as general claims and approved and established by the district court of Scott county, Iowa as such. Coburn then filed objections and exceptions to the report of Lafferty as administrator, allowing the claims as general claims. The guardian for the minor daughter and Lafferty both filed pleadings denying the right of Coburn to the insurance proceeds. Coburn, Hugh, and King applied to this court for an order restraining Lafferty and the guardian from proceeding further in the state court. This application was denied. The cause was then tried in the Iowa court and a decree rendered adjudging that Coburn had no interest in the policies or their proceeds, but that Lafferty as administrator was entitled to hold the proceeds of the policies as trustee for the minor daughter and not as the general assets of the Hazeldine estate. Coburn's claims have since been allowed by the district court of Scott county, Iowa as general claims.

On this appeal appellants contend: (I) That the lower court was without jurisdiction (1) because the requisite diversity of citizenship between the parties did not exist, and (2) because Cramer as administrator under appointment by the Connecticut court, was not subject to process and could neither sue nor be sued outside of the state of Connecticut; (II) that Coburn by reason of attachment proceedings brought in the state of Connecticut, acquired a lien upon the proceeds of each of the insurance policies; (III) that the bill of interpleader filed by the Phœnix Mutual Life Insurance Company should have been dismissed because the amount of the insurance policy was $10,005.20, whereas the company paid into the registry of the court only $9,358.71, claiming to be entitled to the balance in repayment of a loan.

 At the very threshold of the case we are confronted with a motion to dismiss the appeals interposed by the appellees on the grounds (1) that appellants' brief was not filed within the time required by the rules of this court; and (2) that the questions presented by the appeals have become moot. Appellants were three days late in the filing of their brief. The brief, however, was filed before any motion to dismiss was interposed. The slight delay has been fully and satisfactorily explained and was purely accidental so far as appellants were concerned, and in addition to this, no prejudice has been suffered by the appellees by reason of the slight delay. This ground for dismissal is wholly untenable and will be given no further consideration. The other ground for dismissal is bottomed on the fact that subsequently to the entry of the decrees below the proceeds of the life insurance policies deposited with the registry of the lower court, were paid to the Iowa administrator, and the district court of Scott county, Iowa, in a proceeding there pending, adjudged that Coburn had no interest in the policies nor the proceeds arising therefrom, but that Lafferty, as administrator, was entitled to the proceeds as trustee for the minor daughter of deceased. Generally speaking, appellate courts do not sit to give opinions on abstract questions, but only where an actual controversy exists between the parties at the time of the hearing. Missouri Public Service Co. v. City of Trenton (C.C.A. 8) 80 F.(2d) 520. But if the alleged moot question involves the merits, or the controversy has not ceased to exist, although· its status may have been changed by appellee, or where only a part of the controversy has ceased to exist and other questions remain for decision, the appeal will not be dismissed.

 One of the grounds urged by appellants in these appeals is that the lower court was without jurisdiction. If, on consideration of that issue, we should conclude that the court below was without juridisction, the decrees should be reversed, with directions to dismiss for want of jurisdiction. Miller v. First Service Corp. (C.C.A. 8) 84 F.(2d) 680. The jurisdiction of the appellate court ends when it finds want of jurisdiction in the lower court. United States v. Corrick, 298 U.S. 435, 56 S.Ct. 829, 80 L.Ed. 1263. Nothing that has transpired since the entry of the decrees from which the appeals now under consideration were taken has affected this question of jurisdiction. In so far as that question at least is concerned, the motion cannot be sustained. Male v. Atchison, T. & S. F. Ry. Co., 240

U.S. 97, 36 S.Ct. 351, 60 L.Ed. 544; Old Colony Trust Co. v. Seattle, 271 U.S. 426, 46 S.Ct. 522, 70 L.Ed. 1019; Illinois Central Ry. Co. v. Adams, 180 U.S. 28, 21 S.Ct. 251, 45 L.Ed. 410. But we do not think the entry of judgment by the district court of Iowa can be given the effect of rendering any of the questions here involved moot. It appears that the proceeds of the two policies were deposited in the registry of the lower court. In these circumstances that court had exclusive jurisdiction and power to hear and determine all questions respecting title, possession, and control of them. Marcell v. Engebretson (C.C.A. 8) 74 F.(2d) 93; Priest v. Weaver (C.C.A. 8) 43 F.(2d) 57; Isaacs v. Hobbs Tie & Timber Co., 282 U.S. 734, 51 S.Ct. 270, 75 L.Ed. 645; Kline v. Burke Construction Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226, 24 A.L.R. 1077.

██ It is elementary that where one court takes jurisdiction of a specific thing, the res is as much withdrawn from the judicial power of another as if it had been removed to a different territorial sovereignty. The tribunal whose jurisdiction first attaches holds it to the exclusion of the other until its duty is fully performed and the jurisdiction involved is exhausted. It is to be observed too that not only did the United States District Court first acquire jurisdiction of the res, but its judgment relative thereto was entered before the judgment of the district court of Scott county, Iowa. That judgment is therefore not binding in the present suits. O'Connor v. Stanley (C. C.A. 8) 54 F.(2d) 20; Boatmen's Bank of St. Louis v. Fritzlen (C.C.A. 8) 135 F. 650.

The only part of the record in the Iowa state court before this court is the decree. It so happens that the Iowa decree is consistent with the decrees under review here. But if it is res judicata it is not because it is in harmony with the decrees of the lower court, for if conclusive it would be equally so though diametrically opposed to the result reflected by the decrees appealed from. Its conclusiveness under the doctrine of res judicata must come from the power and jurisdiction of the state court to adjudicate and not from the incidental fact that it agrees with the decrees under review.

██ The statute under which these proceedings were taken provides that the insurance company shall pay the money into court. Act Feb. 22, 1917, 39 Stat. 929, as amended, 43 Stat. 976, 49 Stat. 1096 (28 U.S.C.A. § 41(26). The deposit pursuant to this statutory provision clearly brought

the funds within the jurisdiction of the court and to protect the power of determination of rights therein it had the power to enjoin other suits seeking such relief. Ross v. International Life Ins. Co. (C.C.A. 6) 24 F.(2d) 345; Covell v. Heyman, 111 U.S. 176, 4 S.Ct. 355, 28 L.Ed. 390; Kline v. Burke Construction Co., supra. Jurisdiction over the res, its possession and distribution was complete and exclusive in the federal court and the decree of the district court of Scott county, Iowa, is not therefore res judicata.

It is not to be assumed that the Iowa court attempted to exercise a jurisdiction that it did not possess, but rather that it accepted as controlling the exclusive jurisdiction of the federal court and its decree, which denied to all claimants, except the Iowa administrator, any interest in the funds. To hold the state court's decree conclusive on such a record would be manifestly unfair to appellants, for if on that ground the appeal should be dismissed, it would leave the decrees appealed from as final judgments and res judicata on the state court, thereby denying appellants any effective remedy by appeal either in the federal or state court.

██ It is also urged that the appeals should be dismissed because the clerk of the lower court has paid the money over to the Iowa administrator. This at least was no act of the appellants. Their failure to obtain a stay did not affect their right to appeal. Josevig-Kennecott Copper Co. v. Howarth Co. (C.C.A. 9) 261 F. 567; Hoogendorn v. Daniel (C.C.A. 9) 202 F. 431; Dakota County v. Glidden, 113 U.S. 222, 5 S.Ct. 428, 28 L.Ed. 981; O'Hara v. McConnell, 93 U.S. 150, 23 L.Ed. 840. If there should be a reversal, the lower court, having jurisdiction over the parties, would have the right to award restitution. Berthold-Jennings Lumber Co. v. St. Louis, I. M. & S. Ry. Co. (C.C.A. 8) 80 F.(2d) 32, 102 A.L.R. 688; Baltimore & O. R. Co. v. United States, 279 U.S. 781, 49 S.Ct. 492, 493, 73 L.Ed. 954. As said by the Supreme Court in Baltimore & O. R. Co. v. United States, supra, "The right to recover what one has lost by the enforcement of a judgment subsequently reversed is well established. And, while the subject of the controversy and the parties are before the court, it has jurisdiction to enforce restitution and so far as possible to correct what has been wrongfully done. * * * When the erroneous decree was reversed and the invalid order

146

was set aside, the law raised an obligation against each of the west side roads to make restitution of the payments made by the east side roads in compliance with the order."

So, in the instant case, the appellants have the right to prosecute these appeals so as to establish if they can the invalidity of the decrees appealed from and thus give rise to an obligation against the Iowa administrator to make restitution.

Other matters urged in support of the motion to dismiss the appeals go, we think, to the merits of the controversy and do not constitute grounds for dismissal. The motion is therefore denied.

Turning now to the issues raised on the appeals, it is urged that the court below was without jurisdiction of the interpleader suits because of the absence of requisite diversity of citizenship. Both insurance companies are residents and citizens of Connecticut. Cramer is a resident and citizen of Connecticut, as is also Coburn. Grace K. Hugh and Mary E. King are residents and citizens of Ohio, while Lafferty is a resident and citizen of Iowa. If the citizenship of the stakeholder is controlling or of importance, the court was without jurisdiction, because Coburn and Cramer, who are both claimants, are citizens of the same state as the insurance companies. The statute (28 U.S.C.A. § 41(26) does not mention the citizenship of the stakeholder, but provides that the bill of interpleader must allege that "two or more adverse claimants, citizens of different States, are claiming to be entitled to such insurance, indemnity or benefits; that such company, association, or society has paid the amount thereof into the registry of the court, there to abide the judgment of the court." In interpleader proceedings the claimants are the real contestants and their citizenship, and not that of the stakeholder, determines jurisdiction. Interpleader is an "ancient equitable remedy which recognizes the right of a disinterested stakeholder, from whom several persons claim the same thing, debt, or duty, to have the conflicting claimants litigate the matter among themselves without embroiling him in their controversies." Klaber v. Maryland Casualty Co. (C.C.A. 8) 69 F.(2d) 934, 936, 106 A.L.R. 617.

The only concern of the insurance company is that it pay the money into the registry of the court, and that its rival claimants be summoned to present their respective interests to the court for adjudication. In no real sense is it a party to the litigation. This is in line with the rule generally recognized where federal jurisdiction rests upon diversity of citizenship, that "A custodian or stakeholder of property is usually held to be a merely nominal party whose citizenship does not affect the question of federal jurisdiction." Federal Reserve Bank v. Omaha National Bank (C.C.A. 8) 45 F.(2d) 511, 514.

As has already been observed, there was not complete diversity of citizenship between the claimants, and appellants contend that this was fatal to the jurisdiction of the court. The language of the statute (28 U.S.C.A. § 41(26), "two or more adverse claimants, citizens of different States," it must be admitted, is not entirely clear. The Constitution provides that the "judicial Power shall extend to all Cases, in Law and Equity, * * * between citizens of different States." Article 3, § 2. Here there exists a controversy between citizens of different states, but there is also woven into that controversy an apparent controversy between citizens of the same state, to wit, between Cramer as administrator and Coburn as assignee, cocitizens of Connecticut.

Appellants ably argue that citizenship of the same state of two of a large number of adverse claimants is fatal to the jurisdiction of the federal court, but we think the question has been put to rest by the recent decision of the Supreme Court in Dugas v. American Surety Co., 57 S.Ct. 515, 516, 81 L.Ed. 720. That case arose under the same statute as that here involved. It affirms a decision of the Circuit Court of Appeals of the Fifth Circuit, reported in 82 F.(2d) 953. In the bill of interpleader it appeared that there were a large number of adverse claimants whose claims in the aggregate exceeded the amount due from the interpleader. It was alleged that, "This Court has jurisdiction because this is a bill of interpleader in equity brought by a surety company against bona fide adverse claimants against its bond of February 12, 1930, two or more of whom are citizens of different states, and one or more of said adverse claimants resides or reside within the territorial jurisdiction of this Court." There were in fact a large number of claimants residents of Louisiana, where the suit was brought. In the opinion of the Circuit Court of Appeals. 82 F.(2d) 953, it is said, "Claims against said association's qualifying bond are far in excess of the amount of said bond. Some of the claimants now are, and at all times mentioned in the bill were, citizens of named

states other than Louisiana, and some of these claimants now are, and at all times mentioned in the bill were, citizens of the state of Louisiana."

In the course of the opinion of the Supreme Court it is noted that, "Many other claims arising out of insurance written in Louisiana by the Lumbermen's Reciprocal Association were asserted under the qualifying bond."

It is also said, "Plainly the court had jurisdiction of both the subject-matter and the parties. * * * In the interpleader suit there was an actual, complete, and judicially sanctioned payment of the qualifying bond by the surety, and it was on this basis that the surety was discharged from all further liability. While the payment was into the court's registry, and not directly to the claimants, it nevertheless was a lawful and effective payment under the Interpleader Act. In effect, the first decree converted the claims under the bond into claims against the fund paid into the registry; and the second decree, made after a hearing in which all claimants were heard, directed and brought about a distribution of the fund among them according to their ascertained rights."

Again it is said: "The jurisdiction to entertain the supplemental bill is free from doubt."

The court affirmed the decision of the Circuit Court of Appeals which had affirmed the decree of the District Court. It appeared affirmatively that there was not complete diversity of citizenship among the adverse claimants, nor was there diversity of citizenship between the interpleader and all the adverse claimants. There was, however, diversity of citizenship between two or more of the adverse claimants, and it could only have been on that basis that the jurisdiction of the District Court was sustained. We conclude that the lower court had jurisdiction of the parties and the subject-matter, unless, as urged by appellant Cramer, he was immune from process outside of the state of his appointment as administrator. But the cause of action which Cramer sought to assert had never vested in the intestate. The contract of life insurance did not become a debt until the death of the insured, and it was not collectible in the right of the insured. Jefferson Standard Life Insurance Company v. Rankin, 39 Ga.App. 373, 147 S.E. 157. The want of power in a personal representative to sue

or be sued in any sovereignty other than that under whose laws he was appointed, unless authorized by statute of the appropriate jurisdiction, does not apply to a cause of action involving a right which did not belong to the deceased. Moore v. Petty (C.C.A. 8) 135 F. 668; Moore v. Kraft (C.C.A. 7) 179 F. 685; Greasons v. Davis, 9 Iowa, 219; Chamberlain v. Wilson, 45 Iowa, 149. Cramer was therefore not immune from process of the lower court in the instant case.

Prior to the filing of the interpleader bills, Coburn had commenced two suits in Connecticut against the insurance companies and against Cramer as administrator. In each of these cases attachment issued and a bank in Connecticut was garnisheed as debtor of the insurance companies and an undisclosed liability of the bank to the insurance companies was made subject to the garnishment process. Appellants urge that these proceedings created a lien upon the property made subject to process in the Connecticut court prior in point of time to the commencement of the interpleader suits. Great reliance is placed upon the case of Sanders v. Armour Fertilizer Works, 292 U.S. 190, 54 S.Ct. 677, 78 L.Ed. 1206, 91 A.L.R. 950. In that case Connecticut insurance corporations became indebted to Sanders, a citizen of Texas, for a fire loss. Both insurance companies after the loss and adjustment, but before payment to Sanders, were garnisheed in a proceeding instituted against Sanders in an Illinois court by Armour Fertilizer Works. Judgment by default was entered against Sanders. Before default judgment was entered the insurance companies, claiming to be mere stakeholders, filed separate interpleader proceedings in the United States District Court in Texas. They admitted liability to Sanders but gave notice of his claim of exemption under the Texas laws. Sanders and Armour Fertilizer Works were made defendants as alleged adverse claimants. The insurance companies paid the sums admitted to be due into court. The District Court awarded the money to Sanders. The Circuit Court of Appeals (63 F.(2d) 902) reversed and the United States Supreme Court by a divided court affirmed the decision of the Circuit Court of Appeals. The Supreme Court held that under the Illinois proceedings, Armour Fertilizer Works obtained a paramount right to the proceeds of the policy, which should be terminated by a decree devoting the fund in court to the Illinois judgment against Sanders.

 Coburn's rights as plaintiff in the garnishee proceedings·are the same but no greater than the right which the principal defendant has against the garnisheed debtor. Shelton v. Wolthausen, 80 Conn. 599, 69 A. 1030, 125 Am.St.Rep. 131; Fuller v. Foote, 56 Conn. 341, 15 A. 760. Coburn brought his actions directly against the insurance companies and the garnisheed banks disclosed that they were indebted to the insurance companies in an undisclosed amount. No interest in the insurance policies, nor lien of any kind upon their proceeds, was procured. The writ of garnishment was not a physical attachment of any property belonging to the defendant insurance companies, but was a notice to the garnishee to retain in its hands any effects belonging to the defendants or any indebtedness due to the defendants. Century Indemnity Co. v. Kofsky, 115 Conn. 193, 161 A. 101.

In Sanders v. Armour Fertilizer Works, supra, the plaintiff in the Illinois proceedings sued the insured and garnisheed the insurance companies and the liability to Sanders under the policies was made the subject of further proceedings in the Illinois court. Here, however, the insurance companies were defendants and the banks were garnisheed, and all that was made subject to the demands of the plaintiff, had they ripened into judgment, was such indebtedness having no connection with the policies, as the banks respectively owed the insurance companies. The doctrine of Sanders v. Armour Fertilizer Works, supra, is therefore not applicable under the facts in this case.

 The Phœnix Mutual Life Insurance Company in its bill of interpleader alleged that the face amount of the insurance policy which it had issued was $10,000; that there were accumulations amounting to $5.20; that Coburn had brought action "to recover the proceeds of said policy of life insurance," and that each defendant claimed "to be entitled to such insurance and to the money due under said policy or to some portion thereof." It deposited the sum of $9,355.71, alleging that it claimed the right to retain out of the proceeds of the policy the sum of $642, which amount it claimed to have loaned the insured in his lifetime on the security of the policy and for the payment of which it asserted it had a lien on the policy. It is contended that by reason of this claim of lien, the insurance company was not a disinterested stakeholder, but asserted a claim adverse to the interest of defendants,

and had not deposited the full amount of the policy with the court below. However, the answers of the appellants and of the other defendants admitted the allegations with respect to the loan, the lien, and the amount due. No such question was raised below as is now attempted to be raised. The policy contained provision that any sum payable on the death of the insured would be decreased by any indebtedness to it on account of or secured by the policy. The company confessedly owed no more than the face of the policy, less existing indebtedness, and in the absence of any contest below as to the amount due, we must conclude that it deposited in court all that was due on the policy. McNamara v. Provident Savings Life Assurance Society (C.C.A. 5) 114 F. 910.

 The decrees appealed from awarded the funds deposited in the registry of the court to the administrator appointed by the district court of Scott county, Iowa. By section 8776 of the Iowa Code 1935, it is provided that, "A policy of insurance on the life of an individual, in the absence of an agreement or assignment to the contrary, shall inure to the separate use of the husband or wife and children of said individual, independently of his creditors." The funds were therefore not subject to the claims of creditors.

We conclude that the proceedings in the lower court were without prejudicial error, and the decrees appealed from are therefore affirmed.